**Randy J. CLIVER, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 28S00–9305–CR–556.

Supreme Court of Indiana.

May 23, 1996.

Jessie A. Cook, Hellmann Cook & Alexander, Terre Haute, for appellant.

Pamela Carter, Attorney General of Indiana, Suzann Weber Lupton, Office of Attorney General, Indianapolis, for appellee.

On Direct Appeal

DICKSON, Justice.

The defendant, Randy J. Cliver, was convicted of murder and conspiracy to commit murder, for which he was sentenced to sixty and thirty-five years, respectively. In this direct appeal, the defendant presents multiple issues, which we regroup into the following allegations of error:

1. The trial court erroneously allowed the defendant to be cross-examined, over objection, as to a child support debt that he owed;

2. Allowing the State's forensic expert to testify about her findings was improper, because the State did not provide testimony as to the complete chain of custody of the evidence;

3. The State was improperly allowed to call three rebuttal witnesses, and the trial court erroneously denied the defendant's request for a continuance to prepare for that testimony;

4. *Voir dire* was improperly limited to ninety minutes per side;

5. The introduction of the defendant's statement violated his right to counsel under the federal and state constitutions;

6. The trial court erred in not giving defendant's tendered jury instructions 11, 13, and 14; and

7. The trial court erred by allowing the State to amend its charging information.[1]

The charges against the defendant arose from the November 22, 1991, murder of Russell Bolin. The defendant was charged with knowingly killing Russell Bolin after having conspired with Debra Bolin, the decedent's wife and the defendant's girlfriend, and with Charles French, the defendant's friend, to kill the decedent.

Summarized, the facts favorable to the judgment are that the defendant became romantically involved with Debra Bolin and began to discuss with her several different plans for killing her husband. The defendant eventually planned the murder with his friend, Charles French, so that it would appear to be accidental and thus permit Debra to collect the proceeds of certain insurance policies. The plan was that French would take the defendant to the Bolins' house before the decedent returned home from work. The defendant planned to let himself into the house, lie in wait, and then surprise and kill the decedent. The plan was carried out, and French observed the defendant beating and choking the decedent. The body was placed in the decedent's truck, which the defendant drove to a location where he and French intended to stage an auto accident. Realizing that they had neglected to purchase gasoline with which to start a fire, the two men parked the decedent's truck, drove to town in Cliver's vehicle, and purchased gasoline. Upon their return, the defendant set the decedent's truck on fire.

**1. Child Support Arrearage Testimony**

The defendant contends that the trial court erred in allowing the State, over his objection, to question him during cross-examination regarding his child support arrearage. He then testified that the arrearage was approximately $15,000 and that just prior to the murder he had been informed that a wage garnishment was being sought. On appeal, the defendant argues that the arrearage was a collateral matter inadmissible for impeachment and constituted an evidentiary harpoon.

The State asserts that the evidence was presented not for purposes of impeachment but to demonstrate motive. Prior evidence had indicated that two weeks before the victim's death, Debra Bolin took out a life insurance policy on her husband. The other co-conspirator, French, testified that the defendant had said before the murder that he planned to use the insurance proceeds in part to pay his ex-wife, to whom he owed a large amount of money.

Evidence of a defendant's past acts, even those reflecting adversely upon his

---

1. The defendant's brief recites several Indiana constitutional claims, but because he provides no independent, cogent analysis or argument, all such claims are waived. *See Bivins v. State,* 642 N.E.2d 928, 960 (Ind.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).

character, may be admissible for purposes other than character, including motive. *See Campbell v. State*, 622 N.E.2d 495, 500 (Ind. 1993); *Lannan v. State*, 600 N.E.2d 1334, 1339 (Ind.1992).[2] We find no error in the admission of this motive evidence.

### 2. Chain of Custody

■ The defendant next contends that the chain of custody established was inadequate to support a serologist's testimony regarding physical evidence linking the defendant to the decedent's death. Two State Police crime scene technicians testified that they had gathered and sealed the contested evidence into bags, which they then marked with their initials. They arranged for the various samples to be transported to the Indianapolis State Police crime laboratory, and upon arrival the evidence was checked in by technician Connie Faust. Each technician also identified the evidence at trial, stating that it appeared to be in the same condition as when the samples were originally collected, except for the changes caused by testing. Because of a backlog at the Indianapolis laboratory, Faust eventually transported the evidence to the Evansville laboratory for analysis. The serologist from the Evansville office testified to the time of receipt of the samples and to the facts that the bags were still sealed and were delivered by Faust. The defendant urges that because Faust did not testify, there was a fatal gap in the foundation of the evidence. Over the defendant's objection, the trial court admitted the testimony related to the exhibits.

■ In presenting evidence in a criminal trial, the State is not required to negate every remote possibility of tampering. *Starks v. State*, 517 N.E.2d 46, 53 (Ind.1987), *modified on rehearing on other grounds*, 523 N.E.2d 735 (Ind.1988). We have held that a showing of a proper chain of custody requires only that reasonable assurances be provided that an exhibit that has passed through various hands has remained in an undisturbed condition. *Burris v. State*, 465 N.E.2d 171, 185 (Ind.1984), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 816, 83 L.E.2d 809

(1985). The purpose of the chain of custody requirement is to demonstrate the continuous whereabouts of an exhibit from the time it comes into the possession of the police until the time it is presented at trial. *Bell v. State*, 610 N.E.2d 229, 233 (Ind.1993). In *Bell*, the court explained:

> If the State presents evidence which "strongly suggests" the exact whereabouts of the evidence at all times, that is sufficient. The defendant can challenge the adequacy of the foundation but he must present evidence which does more than raise a mere possibility that the evidence could have been tampered with. Any gaps in the chain of custody would go to the weight of the evidence and not to the admissibility of the evidence.

*Id.*

■ We find that the State sufficiently accounted for the whereabouts of the evidence. This Court presumes that public officials who handle evidence use due care and that the evidence is handled properly. *Bell*, 610 N.E.2d at 233. Although Faust gave no testimony herself, the individuals who gave Faust the evidence and the serologist who received the evidence did testify. This testimony, along with that of the technicians who collected the samples, provides adequate assurance that the evidence passed through the various hands in an undisturbed condition. Therefore, absent a showing by the defendant that more than a mere possibility of tampering existed, the State's chain of custody must be deemed sufficient. The defendant has made no such showing and has therefore failed to rebut the presumption of proper handling. We find no error on this issue.

### 3. Rebuttal Witnesses

■ The defendant contends that the trial court erred in permitting the State to present the three rebuttal witnesses whose identities were discovered before trial and not immediately disclosed. Alternatively, the defendant alleges that the trial court erred in

---

**2.** At the time of the defendant's trial, December, 1992, the Indiana Rules of Evidence were not applicable. They became effective January 1, 1994.

denying his Motion for Continuance to prepare for these witnesses' testimony.

■■■ The proper roles of trial and appellate courts in the resolution of discovery disputes are well established:

> A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. Where remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the discovery non-compliance has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial. The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned.

*Vanway v. State*, 541 N.E.2d 523, 526–27 (Ind.1989) (citations omitted).

In *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175 (Ind.1993), this Court clarified the rule concerning disclosure of rebuttal witnesses and held that "the nondisclosure of a rebuttal witness is excused only when that witness was unknown and unanticipated; known and anticipated witnesses, even if presented in rebuttal, must be identified pursuant to a court order, such as a pre-trial order, or a proper discovery request." *Id.* at 179. However, acknowledging that prior jurisprudence had been ambiguous, we stated that "it would be unfair to hold [a party] responsible for failing to predict how this Court would resolve the ambiguity in Indiana's case law." *Id.* at 181. We therefore reversed the trial court's exclusion of the rebuttal testimony of an undisclosed witness.

In the present case, a pre-trial discovery order had been issued by the trial court requiring the State to provide the defendant with the "names and last known addresses of persons whom the State may call as witnesses together with relevant written or recorded statements," and providing that said disclosure obligations constituted a "continuing Order." Record at 29, 30.

During the State's case in chief, Charles French testified that after killing the victim, transporting the body to a remote location, and placing it in the decedent's truck, French and the defendant drove to a gas station to purchase gas to use to start a fire in the vehicle that contained the victim. At the station, they encountered a car full of teenage girls, one of whom knew the defendant. French testified that one of the girls asked the defendant why he had blood on his shoes and that the defendant responded that they had been hunting. It was later determined that this girl was Amy Miller, who testified for the defense, stating she talked briefly with the defendant at the gas station but never saw blood and never asked a question to that effect. She also stated that she was accompanied by three friends, Malinda Miller, Melissa Miller, and Lora White, but that until the week before trial, she had not recalled that her friends were with her. Miller also testified that, as she had not questioned Cliver about seeing blood on him or his clothing, none of her friends could have heard her do so. After she testified, the State notified the defense that it would be calling Miller's three companions as rebuttal witnesses. The State offered to make the girls available to the defense immediately, and defense counsel was given an opportunity to interview these witnesses in advance of their testimony. In the course of his own testimony, the defendant expressly denied that Malinda Miller, one of the subsequent witnesses, had asked him about the blood on his clothes that night.

Thereafter, over the defendant's timely objection to the State's presentation of the three rebuttal witnesses and following a hearing on the objections outside the jury's

presence, the State was permitted to present the testimony of the three friends who accompanied Miller. During the hearing, the prosecuting attorney explained that the State did not know the identities of the three witnesses until less than a week before they were called to testify. This resulted from the defense witness's long-standing assertion that she was alone when she saw the defendant on the night of the murder—a position that she maintained until just prior to her testimony at trial. The State asserted that it learned the week prior to trial that the defense intended to call Amy Miller and that she would maintain her assertion that she was alone. The Friday before Miller testified, the State learned of the presence of Miller's three companions, and two days later, Miller told the defense that three girls had been with her at the time.

■ Although the defendant argues that these three witnesses should have testified as part of the State's case in chief, the record supports the State's contention that these witnesses were called to refute Amy Miller's testimony that no one commented about the blood on the defendant's shoes and to rebut the defendant's testimony denying that he was asked about blood on his clothes on the night of the murder. Under the rule announced in *McCullough*, it is clear that the State should have disclosed all known potential rebuttal witnesses. Because the court ordered that the duty of disclosure be a continuing obligation, the State was affirmatively required to supplement its prior discovery responses as soon as it learned of the identity of such witnesses. However, we decline to apply the *McCullough* rule retroactively to the trial of this case, which was tried one month before *McCullough* was handed down. Furthermore, we emphasize that, while *McCullough* requires the disclosure of known, anticipated, or potential rebuttal witnesses, the issue of whether to impose a sanction or otherwise provide a remedy for violation of this requirement is a matter left to the sound discretion of the trial court. *McCullough*, 605 N.E.2d at 180.

Considering the circumstances shown by the record in this case, we find that the trial court did not abuse its discretion in failing to exclude the rebuttal witnesses or in denying the defendant's Motion for Continuance.

### 4. Voir Dire Time Limit

■ The defendant contends that the trial court erred in limiting the defense's voir dire of the prospective jurors to ninety minutes. Arguing that there was a substantial amount of pre-trial publicity, and that many potential jurors disclosed familiarity with either the media coverage or some of the anticipated witnesses, the defendant asserts that the time limitation restricted or prejudiced his right to a fair and impartial jury trial.

■ Although trial courts have broad discretionary power in regulating the form and substance of voir dire, *Kalady v. State*, 462 N.E.2d 1299, 1307 (Ind.1984), the conduct of voir dire examinations is now governed by Indiana Trial Rule 47(D). *Harrison v. State*, 644 N.E.2d 1243, 1249 (Ind. 1995). The decision of the trial court will be reversed upon appeal only if there is a showing of a manifest abuse of discretion and a denial of a fair trial. *Games v. State*, 535 N.E.2d 530, 538 (Ind.1989), *cert. denied*, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158. This will usually require a showing by the defendant that he was in some way prejudiced by the voir dire. *See Whitehead v. State*, 511 N.E.2d 284, 291 (Ind.1987), *cert. denied*, 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773 (1988).

In the present case, while the defendant would have been entitled to "additional reasonable time upon a showing of good cause related to the nature of the case, the quantity of prospective jurors examined and juror vacancies remaining, and the manner and content of the inquiries and responses given by the prospective jurors," Ind.Trial R. 47(D), he does not contend, nor do we find, that he made a request supported by such a showing of good cause. *See Harrison*, 644 N.E.2d at 1250. Furthermore, we note that the jury was impaneled prior to the expiration of the defense's allocated time. We find no error on this issue.

### 5. Right to Counsel

■ The defendant contends that the trial court erred in denying his Motion to Sup-

press his pre-trial statement to an Indiana State Police Officer. He argues that he was subjected to an inherently coercive interrogation by law enforcement officers after he had become the target of their investigation and that their purpose for questioning him was to elicit incriminating information. He asserts that the State's failure to advise him of his fifth and sixth amendment rights was a violation of his constitutional right to counsel. The statement was admitted over the defendant's timely objection at trial.

The defendant claims that the admission of his statement over his objection was improper because he had not been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* prohibits the introduction at trial of any statement "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. These protections are applicable only if the defendant has been subjected to custodial interrogation, which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

The defendant acknowledges that the requirement that a person be advised of his *Miranda* rights applies only to interrogations conducted in "custodial settings." The defense also correctly notes that "custodial" interrogation may occur without a formal arrest if a reasonable person in the accused's circumstances would believe that he is not free to leave. *See Stansbury v. California*, 511 U.S. 318, ————, 114 S.Ct. 1526, 1529–30, 128 L.Ed.2d 293, 298–300 (1994). Citing *Dickerson v. State*, 257 Ind. 562, 276 N.E.2d 845 (1972), he argues that he was in custody at the time of his statement. However, the warnings are not required simply because the questioning takes place in a police station or because the questioned person is a police suspect. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977). Furthermore,

whether the interrogating officers have focused their suspicions upon the individual being questioned is not a relevant consideration unless they communicate such suspicions to that person. *Stansbury*, 511 U.S. at ————, 114 S.Ct. at 1530, 128 L.E.2d at 293, 300–01 (1994).

The defendant contends that police officers focused their investigation upon him following their search of the victim's residence and their taking of a statement from the victim's wife, Debra Bolin. Police telephoned Cliver late that evening and requested he come to the Linton Police Station for questioning. He went to the station voluntarily, was advised that he was not then under arrest and was free to leave, and was questioned by several law enforcement officers. He was not warned that his statement could be used against him nor advised of his right to counsel. The interviewing officers were dressed in plain clothes and interviewed him in a room with an open door. After the taped interview, the defendant became agitated and, in fact, left the police station without interference.

We conclude that a reasonable defendant would not have believed himself to be in custody and that the *Miranda* warnings were therefore not required in this case. Accordingly, we find that the trial court properly admitted the statements that the defendant made to the police during this questioning.

### 6. Jury Instructions

The defendant contends the trial court erroneously refused to give his proposed final instructions numbered 11, 13, and 14. He alleges that each one of these tendered instructions was a correct statement of law and not covered by the instructions that were given. The State argues that the defense's tendered instruction Number 11 was sufficiently covered by the other instructions given to the jury and, accordingly, there was no error. The State further maintains that any error that may have occurred in the omission of proposed instructions 13 and 14 is not reversible error.

In evaluating whether a trial court erroneously refused a tendered instruction, we consider (1) whether the tendered instruction correctly states the law, (2) whether

there is evidence in the record to support giving the instruction, and (3) whether the substance of the instruction is covered by other instructions. *Miller Brewing Co. v. Best Beers, Inc.*, 608 N.E.2d 975, 979 (Ind. 1993).

■ An examination of the record reveals that the trial court gave the jury an instruction that was very similar to the defendant's tendered instruction Number 11. The defendant's proposed instruction read: "Evidence which establishes a relationship and association between defendant and the others charged and tends to establish a suspicion of guilt is insufficient to sustain a conviction for conspiracy." Record at 744. The instruction actually given to the jury read:

A conspiracy conviction may not be based upon mere suspicion, mere conversations, or a mere showing of an association or relationship between the parties.

In order to sustain a conviction of conspiracy, the evidence must show a meeting of the minds of at least two conspirators on an intelligent and deliberate agreement to commit the felony indicated in the accusation.

Record at 761. We find that the instruction given by the trial court more than adequately covers the substance of the tendered instruction.

■ The defendant also alleges that the trial court erred by not giving two tendered instructions that sought to instruct the jury on the possibility of the defendant being found guilty of only one conspiracy even if he had conspired with two separate individuals. Even if we accept, arguendo, that the defendant's instructions are correct statements of law, this claim must fail, because he has failed to show any prejudice. A defendant must demonstrate that his substantial rights have been prejudiced in order to obtain a reversal for the trial court's failure to instruct the jury. *Lockhart v. State* (1993), Ind., 609 N.E.2d 1093, 1101. If these tendered instructions had been given, the potential result would have been a conviction of one count of conspiracy rather than two. The outcome here was identical. After the jury's verdict had been returned, the trial judge merged the two conspiracy counts for sentencing purposes, because both counts involved the same victim. Record at 785–86. Because the defendant was, therefore, not prejudiced by the refusal to give the tendered instructions, the defendant would not be entitled to a reversal even if it were error to refuse to give these instructions.

### 7. Amendment of the Charging Information

■ The defendant's final allegation of error is that the trial court improperly allowed the prosecution to amend counts II and III of the indictment so that they alleged various alternative acts as a basis for the conspiracy convictions. He contends that the specification of alleged overt acts, connected by the conjunction "or," made it possible for different individual jurors to reach a guilty verdict upon different bases, thus making it impossible to determine whether the jury returned a unanimous verdict. Citing *Hopper v. State*, 475 N.E.2d 20 (Ind.1985), and other authorities, the State counters that it may charge a defendant with committing multiple acts.

■ Clearly, the State may allege multiple acts in one count of an offense. *See* Ind.Trial Rule 8(E)(2). Moreover, the United States Supreme Court has "never suggested that in returning general verdicts ... jurors should be required to agree upon a single means of commission, any more than ... indictments [are] required to specify one [actus reus] alone." *Schad v. Arizona*, 501 U.S. 624, 631–33, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555 (1991) (Souter, J., writing for a plurality). In criminal cases, as in all litigation, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* The State merely presented the jury with alternative ways to find the defendant guilty as to *one element.* We find no error on this issue.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, SULLIVAN and SELBY, JJ., concur.