**Brian R. GRIMES, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 77A01–9707–CR–216.**

Court of Appeals of Indiana.

April 30, 1998.

John D. Bodine, Sullivan, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Brian R. Grimes (Grimes), appeals his conviction for Nonsupport of a Dependant, a Class D felony.[1]

We affirm.

Grimes asserts essentially two issues on appeal, which we restate as follows:

(1) The evidence is insufficient to support the conviction.

(2) The court erred in failing to take judicial notice of allegedly controlling case law.

Because the level of support provided by Grimes was, at best, minimal, we cannot say, as a matter of law, that Grimes' arrearage was inadequate to preclude criminal liability for nonsupport. Also, there was no error with regard to the matter of judicial notice.

Grimes and Nancy Pirtle (Pirtle) were married in 1981. The marriage was dissolved in 1992. Grimes was ordered to pay $75 per week in child support for their three children beginning January 1, 1993. Through March 1993, Grimes made direct payments to his wife totaling $526, for which he was given credit for in his arrearage calculation. (R. at 481). From April 1993 through August 1996, the Sullivan County Clerk received payments totaling $6,267.85. Included in this amount was a $4,207.85 payment made from real estate proceeds.[2] Grimes has therefore received credit for this amount against his arrearage. The total amount of support required under the court order from January 1993 through December 27, 1996 was $15,600.[3] Giving Grimes credit for $526 in direct payments, and $6,267.85 paid to the Sullivan County Clerk, as of December 27, 1996, the date alleged in the information filed by the Sullivan County Prosecutor on January 17, 1997, Grimes was $8,806.15 in arrears.[4] The Sullivan County Prosecutor alleged in their complaint that Grimes was delinquent $8,315.[5] As of Feb-

---

1. I.C. 35–46–1–5(a) (Burns Code Ed.Supp.1997) provides: "A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Class D felony."

2. The $4,207.85 represents Grimes' portion of the proceeds from a court ordered sale of a home he owned jointly with his ex-wife, and was paid to the Sullivan County Clerk's office so that it could be applied to Grimes' support arrearage on 3/1/96.

3. From January 1, 1993 through December 27, 1996, there were 208 weeks (4 years × 52 weeks = 208). $75 × 208 = $15,600.

4. The calculation: $15,600 − $526 − $4,207.85 − $2060 = $8,806.15.

5. We are unable to discern from the record the cause of the discrepancy between our arrearage calculation of $8,806.15 and the Prosecutor's calculation of $8,315.

ruary 24, 1997, Grimes' support arrearage had reached $8,731.15.

## SUFFICIENCY

■ Grimes argues that the evidence is insufficient to support his conviction. In *Geans v. State* (1993) Ind.App., 623 N.E.2d 435, 437–38, the court stated:

"[A] parent may escape criminal liability by doing that for which he or she would find no refuge in a dissolution court, namely, providing a dependent child with food, clothing, shelter or medical care. However, to escape criminal liability the parent must provide more than a mere token amount of support. (Citation omitted). The record reveals that Geans provided some sort of support in the form of clothing to each of his dependent children. The total amount of support provided however was minimal at best. Although substantial amounts of food, clothing and shelter may preclude criminal liability, the token amounts provided in this case are simply not enough to avoid prosecution."

*Geans* creates a continuum upon which a parent's level of support, or nonsupport, is measured to determine criminal liability. However, in structuring its continuum, the *Geans* court used the somewhat ambiguous terms of "minimal" and "token" to describe the level of support which is insufficient to shield a parent from criminal liability. While it is clear that "minimal" or "token" support is not enough, *Geans* leaves room for interpretation as to exactly what level of support is adequate to avoid criminal liability.

[2] Grimes argues that despite a large arrearage, he has provided sufficient support in other areas, in addition to the payments he has made, to avoid criminal sanctions. *Geans* specifically provided that, in criminal prosecutions, providing food, clothing, shelter or medical care may be considered "support" when assessing criminal liability. *Id.* at 437. Therefore, the fact that a parent owes a substantial amount of support arrearage is not necessarily dispositive in determining criminal liability.

However, in the instant case, in addition to a large arrearage, other types of support allegedly provided by Grimes do not suffice to avoid criminal culpability. Grimes' mother testified that, from 1993 through 1997, her son provided the children with unspecified amounts of pizza, boots and camouflage clothes. She also stated that he gave her some money which she used to buy clothes at a yard sale. She further testified that, after Grimes' health insurance expired in 1994, he might have paid a $35 doctor bill. From April 1993 through December 1996, Grimes was delinquent $8,315, which represents over fifty percent of his court-ordered obligation even though his weekly payment was only $75. Such level of assistance, over an approximate four-year period, can only be described as minimal or token.

While noting the absence of any concrete standards defining what constitutes "minimal" or "token" support, we cannot say, as a matter of law, that Grimes' support arrearage was *de minimis*, so as to avoid criminal liability. Therefore, sufficient evidence supports the conviction.

## JUDICIAL NOTICE

■ Next, Grimes contends that the trial court erred in denying his request that the court take judicial notice of specific Indiana case law. Specifically, Grimes argues that the court was required to take judicial notice of tendered case law under Ind.Evid.Rule 201. The relevant portion of Evid.R. 201(b) provides: "A court may take judicial notice of law. Law includes (1) the *decisional,* constitutional, and public statutory law...." (Emphasis supplied). Evid.R. 201(d) states: "A court *shall* take judicial notice if requested by a party and supplied with the necessary information." (Emphasis supplied).

Grimes requested that the court take judicial notice of the decisional law of the State of Indiana as set forth in *Geans, supra,* 623 N.E.2d at 435. The court originally decided to take judicial notice of the case, but subsequently denied the request at the close of trial. This ruling was made in the context of final instructions to be given. However, the court allowed Grimes to utilize *Geans* in his closing argument. Grimes did not submit a jury instruction which either referred to, or drew from, the holding in *Geans.*

Grimes claims he was prejudiced by the court's refusal to take judicial notice because it denied him a corresponding mandatory jury instruction. However, because the evidence in the record does not support a jury instruction incorporating the holding in *Geans,* Grimes could not have suffered any prejudice from the court's decision not to take judicial notice of the case.

■ Even had Grimes tendered a *Geans* instruction, the court would not have been required to give it. In evaluating whether a trial court erroneously refused a tendered instruction, we consider (1) whether the tendered instruction correctly states the law; (2) whether evidence of record supports giving the instruction; and (3) whether the substance of the instruction is covered by other instructions. *Cliver v. State* (1996) Ind., 666 N.E.2d 59, 66–67, *reh'g denied.*

The evidence presented at trial indicates Grimes provided only a token or minimal amount of support. Therefore, because *Geans* holds that merely providing token or minimal support is insufficient to avoid criminal liability, any proposed instruction based upon its holding was unsupported by evidence in the record.

The judgment of the trial court is affirmed.

KIRSCH, J., concurs.

FRIEDLANDER, J., dissents and files separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the evidence supports the conviction.

As noted by the majority, in order to escape criminal liability under IC § 35–46–1–5, a person must provide more than token, or minimal, support. I certainly agree with the majority that the standard set forth in *Geans v. State,* 623 N.E.2d 435, utilizing the terms "token" and "minimal", provides little guidance in evaluating the circumstances of any given case. Be that as it may, I believe that Grimes has paid more than mere "token" or "minimal" support and therefore that the evidence does not support the conviction. In support of my conclusion, I note that Grimes paid approximately forty-two percent of the court-ordered support during the period in question and contributed an additional, undetermined amount for food and clothing over that same time. While I do not condone Grimes's failure to pay his support obligation in full, I cannot agree that in the context of the parties' respective circumstances Grimes's contributions constituted only "token" support within the meaning of *Geans.*

Finally, I note that the majority affirms the conviction because it "cannot say, as a matter of law, that Grimes's support arrearage was *de minimus,* so as to avoid criminal liability." Op. at 1363. In so stating the basis of its conclusion, I believe that the majority has incorrectly focused the "token" inquiry upon the amount of the arrearage rather than the amount of support paid. The *Geans* court indicated that the relevant inquiry focuses upon the amount paid, not the amount of the arrearage. I believe that the majority errs in affirming the conviction on the basis that the amount of the *arrearage* is more than a token amount, rather than, as indicated in *Geans,* upon the basis that the *amount paid* represents merely a "token" amount.

Because I believe that Grimes paid more than token or minimal support, I would reverse the conviction.