BEVERLY ENTERPRISES, INC. d/b/a Greenbriar Rehabilitation Center, Appellant–Defendant,

v.

Mary SPRAGG, Appellee–Plaintiff.

No. 49A05–9711–CV–479.

Court of Appeals of Indiana.

June 17, 1998.

Scott A. Weathers, Steven K. Huffer, Huffer & Weathers, P.C., Indianapolis, for Appellant–Defendant.

Richard L. Brown, Jr., Brown & Hastings, Indianapolis, for Appellee–Plaintiff.

## OPINION

MATTINGLY, Judge.

Beverly Enterprises, Inc. d/b/a Greenbriar Rehabilitation Center (Greenbriar) appeals a jury verdict awarding damages to Mary Spragg (Spragg), who was injured when she slipped and fell at Greenbriar. We restate Greenbriar's issues as follows:

1. Whether the jury improperly considered an injury to Spragg's knee in its award of damages, when her doctor testified there was a possible relationship between the accident and the knee injury.

2. Whether the damages the jury awarded were excessive when the damages were approximately 16 times the amount of the plaintiff's actual medical expenses.

3. Whether a party may assert as error on appeal a question asked at trial by opposing counsel, when its objection to the question was sustained and it failed to move for a mistrial or to ask the judge to admonish the jury.

We affirm.

### FACTS

On September 12, 1995, Mary Spragg, 70 years of age, was visiting her mother at Greenbriar. As she was leaving her moth-er's room, Spragg slipped on a recently-mopped floor and fell. She was taken to St. Vincent's Hospital, where she received six stitches for a laceration in her forehead. She complained of shoulder pain and was given pain medication. The next day, Spragg was seen by Dr. John Garber, an orthopedic surgeon.[1] Dr. Garber treated Spragg's shoulder injury conservatively and with physical therapy. She ultimately underwent two arthrograms of that shoulder, each showing a "partial thickness tear of the rotator cuff and a small full thickness tear of the rotator cuff." R. 202.

On October 10, 1995, about one month after the accident, Spragg returned to Dr. Garber complaining of pain in her right knee. Dr. Garber injected her knee with cortisone. An MRI "demonstrated a tear of the medial meniscus of the right knee." R. 201. Dr. Garber ultimately performed an arthroscopic surgery on that knee, finding large tears of both the medial and lateral menisci. R. 205.

Spragg's medical bills were $7,817.42.[2] After deliberation, a jury returned a verdict of $139,800 and found Greenbriar 92% at fault. After reduction for Spragg's comparative fault, judgment was entered on a verdict of $128,616.

Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION

1. Whether the jury improperly considered an injury to Spragg's knee in its award of damages, when her doctor testified there was a possible relationship between the accident and the knee injury.

Greenbriar first argues the amount of the verdict indicates that the jury improperly included Spragg's right knee injury in determining its award of damages. We disagree. Spragg first complained to her physician, Dr. Garber, of right knee pain on October 10, 1995—almost one month after the accident. In his medical records, Dr. Garber opined it was "possible, but unlikely" there was a relationship between Spragg's right knee com-

---

1. Dr. Garber was Spragg's nephew-in-law.

2. These were the only specific special damages presented.

plaints and the accident. R. 215. According to *Glenn v. Board of Comm'rs, Harrison County, Ind.*, 552 N.E.2d 485, 487 (Ind.Ct. App.1990), expert medical opinion given with less than reasonable certainty is not sufficient, standing alone, to support a verdict. However, it is within the province of the fact finder, in this case the jury, to weigh the evidence and determine the credibility of an expert's opinion based on the evidence presented and the degree of certitude with which the opinion is stated. *Id.*

▪ Evidence was presented at trial that Dr. Garber had never treated Spragg for right knee problems before the accident and that the position in which Spragg was found after her fall was consistent with her type of right knee injury. Dr. Garber also testified that if there was no other incidence of injury to her right knee, then the indication would be that the fall caused the injury. R. 222. Spragg testified that she had not injured her right knee before she fell at Greenbriar. R. 318, 319. This evidence, in addition to Dr. Garber's opinion, was sufficient to allow the jury to find Spragg's right knee injury was related to the accident.

2. Whether the damages the jury awarded were excessive when they were approximately 16 times the amount of the plaintiff's actual medical expenses.

Greenbriar also asserts that regardless of whether the jury included the right knee injury, the damages awarded were excessive. Our review of damage awards is deferential:

An appeal of a damage award as excessive is governed by a strict standard of review. We will neither reweigh the evidence nor judge the credibility of witnesses, and will consider only the evidence favorable to the award. A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. A damage award must be supported by probative evidence and cannot be based on mere speculation, conjecture, or surmise. Thus, a damage award will be reversed only when it is not within the scope of the evidence before the finder of fact.

*Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind.Ct.App.1993).

The evidence presented was that Spragg's medical expenses were $7,817.42. She underwent two shoulder arthrograms and was diagnosed with "a partial thickness tear of the rotator cuff and a small full thickness tear of the rotator cuff." R. 202, 209. Dr. Garber testified that if Spragg's shoulder symptoms became worse, she might have to undergo future surgery which could cost approximately $5,000.00. R. 211, 212. If she did undergo surgery, she would have scarring. Dr. Garber testified that Spragg was more prone to injure her shoulder than was a healthy person. Spragg also underwent an arthroscopic surgery on her knee, which left a scar.

▪ Spragg testified that she was right handed and no longer had the strength in her right shoulder that she had before the accident. She was not able to lift her garage door by herself and had difficulty with any overhead motion. She could not start her lawnmower or use a vacuum cleaner with her right arm. She could not reach the upper shelves in her kitchen like she could before. She had trouble sleeping, and shoulder pain would wake her up once or twice a night. She testified that she lived alone and was concerned that she would be incapacitated if she were to have future shoulder surgery. Dr. Garber testified that Spragg had permanent impairments from both the shoulder and the knee injuries.

The jury's verdict of approximately 16 times special damages was not outside the scope of the evidence which was before the jury and was not based merely on conjecture, speculation, or surmise. See *Kimberlin v. DeLong*, 637 N.E.2d 121, 130 (Ind.1994) and *Wal–Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind.Ct.App.1992), where awards of 18 times special damages and 33 times special damages, respectively, were found not to be excessive. Thus, we cannot say the verdict in this case was excessive.

3. Whether a party may assert as error on appeal a question asked at trial by opposing counsel, when its objection to the question was sustained and it failed to

move for a mistrial or ask the judge to admonish the jury.

Greenbriar argues that a question asked by Spragg's attorney caused the jury to be prejudiced against Greenbriar. Specifically, Spragg's attorney asked his client "Now let's take a look at this risk management report. You don't have the original of it, do you?" R. 350. Spragg responded that she did not have the original, and that the report was a photocopy. Greenbriar's counsel objected, noting the parties had already stipulated to the exhibits. During a conference out of the hearing of the jury, Spragg's attorney indicated to the court the stipulation was to the admissibility of the records, and he had the right to question the authenticity of the document and whether it had been altered. The trial court sustained Greenbriar's objection. Greenbriar did not ask the judge to admonish the jury and did not move for a mistrial.

■ Even if counsel's question, without more, could have had a prejudicial effect on the jury, we note that a party cannot use an objection which has been sustained as the basis for an appeal. *Green v. Green*, 447 N.E.2d 605, 611 (Ind.Ct.App.1983). Had Greenbriar believed itself to be prejudiced, its remedy would have been to ask for a mistrial, or even for an admonition, neither of which it requested. "A party may not, by action or inaction, await the verdict and then seek to set it aside for error that could have been averted or corrected." *Bryant v. State*, 270 Ind. 268, 273–74, 385 N.E.2d 415, 419 (1979). Greenbriar did not preserve its right to challenge Spragg's counsel's question on appeal.

Affirmed.

RUCKER and STATON, JJ., concur.