Mark E. BISHOP, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–9711–CR–751.

Court of Appeals of Indiana.

Sept. 29, 1998.

---

Steven P. Meyer, Rosenthal, Greives, O'Bryan & Meyer, Lafayette, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rosemary L. Borek, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

### Case Summary

Mark Bishop appeals his conviction for two counts of Operating a Motor Vehicle While Privileges are Forfeited for Life. We affirm.

### Issue

Bishop presents one issue for our review which we restate as follows: whether the trial court erred in denying his motion to suppress evidence.

### Facts and Procedural History

On April 30, 1991, Bishop's driving privileges were suspended for life after he was convicted of being an habitual traffic violator. On April 22, 1996, Bishop's driving privileges were again suspended for life after he was convicted of operating a vehicle while an habitual traffic offender.

On November 17, 1996, two officers, Jeffrey Clark and Thomas Davidson, responded to a battery complaint made by Bishop. After arriving on the scene, the officers questioned Bishop about the battery then asked him to "hang tight" while they spoke with the alleged batterer, known as Haymaker. Record at 70. Bishop directed the officers to Haymaker's house, which was one-half block away. Haymaker told the officers that Bishop had driven his truck into Haymaker's truck. The officers observed damage to Haymaker's truck and skid marks near the truck.

The officers returned to Bishop and asked to see his truck. Bishop took the officers to his truck. The officers then asked Bishop whether he had driven his truck in the alley behind Haymaker's house. Bishop responded, "yes, but I didn't hit anything." Record at 78. At some point the officers ran a license check through the Bureau of Motor Vehicles computer and learned that Bishop was an habitual traffic violator and that his driving privileges were suspended for life. After learning this, Officer Clark asked Bishop whether he had driven on the street in order to get to the alley. Bishop replied that a friend had dropped him off. Officer Clark then asked "a friend dropped you off, you drove in the alley, the friend then picked you up and drove over here?" Record at 82. Bishop did not respond to this question. Bishop was not given *Miranda*[1] warnings at any point in time.

Bishop was charged with two counts of Operating a Motor Vehicle While Privileges are Forfeited for Life, a Class C felony. Bishop filed a motion to suppress all statements made by him prior to and after his arrest on grounds that he was not advised of his *Miranda* rights. A jury trial was held and a suppression hearing was also held on the same day, prior to the trial. The trial court denied Bishop's motion to suppress. A jury convicted Bishop as charged.

### Discussion and Decision

Bishop argues that the statements he made to Officers Clark and Davidson should have been suppressed at trial as the statements were obtained in violation of the Fifth Amendment to the U.S. Constitution and Article I, Section 13 of the Indiana Constitution. Specifically, Bishop argues that he was subjected to custodial interrogation without being advised of his rights as required under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Here, Bishop objected to statements made by him to Officers Clark and Davidson during their investigation. The statements were admitted into evidence at trial through Officer Clark's deposition. Prior to Officer Clark's deposition, Bishop had filed a motion to suppress statements made by Bishop to Clark and Davidson based on the fact that he was never advised of his *Miranda* rights. During the deposition, at the point when Officer Clark was asked what Bishop said to the officers, Bishop's attorney objected "based on grounds stated in my Motion to Suppress" and asked Clark several foundational questions to establish the basis for the objection.

At trial, when Clark's deposition was being entered into evidence, Bishop's attorney again objected to the statements. Thus, the error, if any, has been clearly preserved.

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ We now turn to the merits of his *Miranda* argument. In reviewing the trial court's denial of a motion to suppress, we do not reweigh the evidence, but will look to the evidence most favorable to the ruling and any uncontradicted adverse evidence. *Roberts v. State*, 599 N.E.2d 595, 597 (Ind.1992).

■ *Miranda* prohibits the introduction at trial of any statement "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Cliver v. State*, 666 N.E.2d 59, 66 (Ind.1996) (quoting *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612). The *Miranda* warnings must inform the defendant of his right to remain silent and to the presence of an attorney and warn the defendant that any statement made may be used as evidence against him. *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind.1995). Statements obtained in violation of this rule are generally inadmissible in a criminal trial. *Id.* The protections are only implicated where the defendant has been subjected to custodial interrogation, which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Cliver*, 666 N.E.2d at 66. Thus, the initial *Miranda* inquiry is whether the defendant was "in custody" at the time of questioning. A criminal defendant is deemed in custody if a reasonable person in the same circumstances would not feel free to leave. *Loving*, 647 N.E.2d at 1125. Whether a person was in custody depends upon "objective circumstances", not upon the subjective views of the interrogating officers or the subject being questioned. *Id.*

■ Bishop was not in custody during the initial police questioning. Bishop himself called the police as a battery victim and was asked questions only about the battery incident. *Miranda* requirements are not applicable to general on the scene questioning in a noncoercive atmosphere. *Seeglitz v. State*, 500 N.E.2d 144, 146 (Ind.1986). However, we must also examine whether Bishop was in custody during the second stage of questioning, which occurred after the officers questioned Haymaker.

In *Cliver*, a defendant who was the suspect in a murder investigation was asked by police officers to come to the station for questioning. The defendant complied with the request. Our supreme court held that the defendant was not in custody during questioning stating, "[*Miranda*] warnings are not required simply because the questioning takes place in a police station or because the questioned person is a police suspect." *Cliver*, 666 N.E.2d at 66. Although the *Cliver* officers did inform the defendant that he was not under arrest and was free to leave, the court also emphasized the fact that the interrogation took place in a room with an open door and the defendant was allowed to leave when he became agitated and wanted to end the questioning. *Id.*

In cases where the court has held that a defendant was in custody, thus implicating *Miranda* requirements, the facts have demonstrated a "degree associated with formal arrest." *See Loving*, 647 N.E.2d at 1126. For example, in *Loving*, the defendant was questioned at the crime scene, handcuffed, placed in the back of a marked police car, and taken to the police station. *Id.* at 1125. He was then taken into an interrogation room measuring eight feet by eight feet and questioned by a police officer. *Id.* Specifically citing the use of handcuffs in its reasoning, our supreme court held that a reasonable person in the defendant's circumstances would not have believed himself to be free to leave. *Id.*

In *Houser v. State*, 678 N.E.2d 95 (Ind. 1997), the defendant was essentially detained in a corner of his business while police conducted a thorough search of the premises in a murder investigation. *Id.* at 101. The court assumed without deciding that *Miranda* warnings should have been given prior to questioning. *Id.* at 102. Lastly, in *Johnson v. State*, 269 Ind. 370, 380 N.E.2d 1236 (1978), the defendant, who was a murder suspect, was sitting on his front porch still covered in blood from the murder when he was approached by three police officers. The officers arrived at the defendant's residence with the purpose of apprehending him

for the murder. *Id.* at 1240. The defendant was in custody since he was clearly not free to leave. *Id.*

■ Bishop was not in custody during the second stage of police questioning. Before going to question Haymaker, the officers asked Bishop to "hang tight." They then left Bishop standing on a public sidewalk, out of their sight, while they spoke with Haymaker. While Bishop testified that he did not feel free to walk away, his subjective belief is not controlling. Clearly, at that juncture he occupied the role of an injured victim rather than a suspect. When the police returned, the conversation continued at Bishop's residence and without any physical restraints imposed by the officers. The ultimate inquiry is simply whether there has been a "formal arrest or restraint on freedom of movement" of the degree associated with formal arrest. *Loving,* 647 N.E.2d at 1125 (citing *California v. Beheler,* 463 U.S. 1121,1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)). Here the facts fail to demonstrate that Bishop was in custody. Therefore, *Miranda* warnings were not required. The trial court properly denied the motion to suppress and admitted the evidence.

Affirmed.

RUCKER and RILEY, JJ., concur.