Guadalupe MORALES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A05–0007–CR–294.

Court of Appeals of Indiana.

June 8, 2001.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Guadalupe Morales appeals her conviction following a jury trial of Neglect of a Dependent, as a Class B felony. She presents two issues for our review, which we restate as:

1. Whether the trial court erred when it denied her motion to suppress her incriminating statements.

2. Whether the trial court abused its discretion when it denied her motion for mistrial.

We affirm.[1]

---

1. We heard oral argument at Jasper High School in Dubois County on May 15, 2001.

## FACTS AND PROCEDURAL HISTORY

Morales emigrated from Mexico and speaks very little English. On January 11, 1999, Morales took her two-year-old daughter, J.M., to the Medical Center of Southern Indiana in Charlestown. When they arrived at the emergency room, Morales told the triage nurse that J.M. needed medical treatment for diaper rash.[2] The nurse examined J.M.'s buttocks and suspected that J.M. had sustained a burn injury rather than diaper rash. Dr. Glen Franklin examined J.M., diagnosed her with a scald injury to her buttocks, and ordered that J.M. be transferred to Kosair Children's Hospital in Louisville, Kentucky, for medical treatment. Concerned that the injury stemmed from abuse or neglect, Dr. Franklin immediately reported the incident to Child Protective Services ("CPS").

Before J.M. was transported to Kosair, Charlestown Police Officer Don Wolfe arrived at the hospital and asked to speak with Morales. Officer Wolfe also asked Crystal Chavez, a police dispatcher who speaks both English and Spanish, to come to the hospital to act as an interpreter. Through Chavez, Officer Wolfe told Morales that he wanted to talk to her about J.M.'s injury. Morales agreed and followed Officer Wolfe, Chavez, and Officer John Ennis to the hospital's chapel. Before Officer Wolfe initiated any questioning of Morales, he asked Chavez to translate a Miranda[3] warning card into Spanish for Morales. After Chavez read the card, Officer Wolfe asked Morales about J.M.'s injury. Morales initially stated that it was diaper rash, but after Officer Wolfe expressed skepticism, she stated that her five-year-old son had placed J.M. into a small bucket of hot water. After talking to Officer Wolfe for approximately twenty or thirty minutes, Morales returned to J.M.'s bedside.

Officer Wolfe, Officer Ennis, Chavez, and CPS investigator Chris Yarbrough proceeded to Morales' residence, where they met Morales' husband, Martin Perez. After Chavez orally translated a Miranda warning card for Perez, Officer Wolfe questioned Perez about J.M.'s injury. When Morales arrived home from the hospital, Officer Wolfe was still present and asked her to go to the police station for further questioning. Morales agreed, and she rode in a police car with Officer Ennis and Chavez.

At the station, Chavez orally translated an "Advice of Rights" form into Spanish for Morales, but Chavez failed to translate the "Waiver of Rights" portion of the form. See infra. After Morales signed the form, Officer Wolfe continued questioning her about the cause of J.M.'s injury. During the thirty or forty-five minutes of questioning, Morales again gave inconsistent explanations regarding the cause of the burn on J.M.'s buttocks. At one point, Officer Wolfe advised Morales that he would "let [her] go" to the hospital to see J.M. if she told him "what really happened." Record at 861. She finally told Officer Wolfe that "some girls had come to her door and called her some names[,]" and that "she was upset for being called the names, . . . and the baby had been crying and . . . she took the baby to the bathroom and [ran] hot water." Record at 779. Morales also told Dr. Carla Alcid, J.M.'s treating physician at Kosair, that the burn to J.M.'s buttocks was caused

---

2. Morales' neighbor Wanda Thacker, who speaks both Spanish and English, accompanied Morales to the hospital to act as an interpreter.

3. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

when she placed J.M. into the bathtub. Dr. Alcid relayed that information to Yarbrough.

The State charged Morales with neglect of a dependent, as a Class B felony, for causing J.M.'s burn injury. Morales filed a motion to suppress her statements to police at the hospital and at the police station, as well as her statements to Dr. Alcid, on the ground that she had not been adequately advised of her *Miranda* rights. After a hearing, the trial court denied that motion and proceeded to trial. A jury found Morales guilty. She now appeals.

## DISCUSSION AND DECISION

### Issue One: Motion to Suppress

Morales first contends the trial court erred when it denied her motion to suppress her statements to police. Specifically, she argues her statements should have been suppressed because she did not knowingly, voluntarily, or intelligently waive her *Miranda* rights. Morales also maintains her statements to Dr. Alcid should have been suppressed under the "fruit of the poisonous tree" doctrine. The State responds that there is no *Miranda* issue here because Morales was not in police custody when she made the challenged statements. We address each of Morales' contentions in turn.

We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant. *Id.*

### A. Hospital Chapel

■ It is well settled that the protections afforded under *Miranda* are implicated only when the defendant has been subjected to a custodial interrogation, which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Bishop v. State*, 700 N.E.2d 473, 476 (Ind.Ct.App.1998) (citation omitted). Thus, the initial *Miranda* inquiry is whether the defendant was "in custody" at the time of questioning. *Id.* A criminal defendant is deemed in custody if a reasonable person in the same circumstances would not feel free to leave. *Id.* Whether a person was in custody depends upon "objective circumstances," not upon the subjective views of the interrogating officers or the subject being questioned. *Id.*

Here, we cannot say that Morales was in formal custody or that her freedom of action was limited in any significant way when she made her statements to police in the hospital chapel. Morales voluntarily accompanied Officer Wolfe to the chapel to discuss J.M.'s injury. *See Cliver v. State*, 666 N.E.2d 59, 66 (Ind.1996) (finding *Miranda* warning not required where defendant voluntarily went to police station for questioning). While neither Officer Wolfe nor Chavez advised Morales that she was free to leave the chapel, we find nothing in the record to suggest that a reasonable person would not have felt free to leave under the circumstances. We conclude that Morales was not subjected to a custodial interrogation in violation of her *Miranda* rights at the hospital chapel. Accordingly, the trial court did not err when it denied her motion to suppress her statements to police in the chapel.

### B. Police Station

■ On the other hand, Morales was clearly subjected to a custodial interroga-

tion at the police station. Officer Ennis drove Morales to the station in a police car. Once there, Officer Wolfe advised Morales that if she told him what happened to J.M., he would "let [her] go" to the hospital to see her child. Since Morales was told, in effect, that she needed Officer Wolfe's permission to visit her own daughter, we conclude that a reasonable person would not have felt free to leave the police station. In fact, it was only after further interrogation that Wolfe stopped the interview and allowed Morales to leave. Accordingly, Morales was entitled to an advisement of her *Miranda* rights. We must address, then, the issue of whether Morales knowingly, voluntarily, and intelligently waived her *Miranda* rights before she answered Officer Wolfe's questions.

 A waiver of one's *Miranda* rights occurs when a defendant, after being advised of those rights and acknowledging an understanding of them, proceeds to make a statement without taking advantage of those rights. *Crain v. State*, 736 N.E.2d 1223, 1230 (Ind.2000). In addition to the required *Miranda* advisement, a defendant's self-incriminating statement must also be voluntarily given. *Id.* In judging the voluntariness of a defendant's waiver of rights, we will look to the totality of the circumstances to ensure that a defendant's self-incriminating statement was not induced by violence, threats, or other improper influences that overcame the defendant's free will. *Id.* The State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given. *Id.* The decision whether to admit a confession is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *Id.* When reviewing a challenge to the trial court's

decision to admit a confession, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Id.*

 Here, Chavez orally translated an "Advice of Rights" form for Morales, asking her whether she understood the translation upon completion of each line. However, Chavez admits that she did not translate the "waiver" portion of the form, which reads:

### WAIVER OF RIGHTS

* * *

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Record at 775. Moreover, while Chavez asked Morales whether she understood her translation of each word, Chavez never asked Morales whether she understood her rights and never advised her that she would be waiving these rights by signing the waiver form. *See Dickerson v. State*, 257 Ind. 562, 276 N.E.2d 845, 850 (1972) (finding it misleading to instruct defendant to sign rights form "if he understood it.") As our supreme court noted in *Dickerson*, a defendant should not be instructed to sign a waiver form if he understands it, but rather he should be informed that he is "signing a waiver of his rights and that he should sign it only if he desire[s] to answer questions at that time without the presence or advice of an attorney." *Id.* We conclude that, under the circumstances, Morales did not knowingly, voluntarily, or intelligently waive her *Miranda* rights, and the trial court erred when it denied

her motion to suppress her statements to police at the police station.

In addition, we note that Morales claims to have had difficulty understanding Chavez's Spanish translation throughout the questioning by police. Chavez admitted that she had no formal training as an interpreter, so we are unable to say whether Morales' complaint on this issue is unfounded.[4] In light of the fifty-five percent increase in Indiana's Hispanic population during the past decade, *see Stats Indiana, available at* http://www.stats.indiana.edu/profiles/pr18000.html, this court is concerned that the unavailability of qualified interpreters throughout the state might impinge on the constitutional rights of Hispanics. *See Court Interpretation: Model Guides for Policy and Practice in the State Courts* 11 (State Justice Institute 1995) (noting that large increases in minority populations make it more difficult for criminal justice system to meet constitutional requirements of fundamental fairness, equal protection, and right to cross examine adverse witnesses).

The constitutional issues arising from ad hoc oral translations presented in this appeal are likely to recur. We think both the defendant's rights and effective law enforcement would be better served if standardized forms containing *Miranda* warnings and waivers written in Spanish were created and distributed to all law enforcement agencies. Similar forms should be made available for other large non-English speaking populations within our state. The use of such forms would minimize translation issues and facilitate review of *Miranda* challenges on the merits both in the trial courts and on appeal.

Nonetheless, statements obtained in violation of *Miranda* and erroneously admitted are subject to harmless error analysis. *Davies v. State,* 730 N.E.2d 726, 735 (Ind.Ct.App.2000), *trans. denied, cert. denied,* —— U.S. ——, 121 S.Ct. 1410, 149 L.Ed.2d 352 (2001). The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Ground v. State,* 702 N.E.2d 728, 732 (Ind.Ct.App.1998). A federal constitutional error is reviewed de novo and must be "harmless beyond a reasonable doubt." *Alford v. State,* 699 N.E.2d 247, 251 (Ind.1998) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The court must find that the error did not contribute to the verdict, that is, that the error was unimportant in relation to everything else the jury considered on the issue in question. *Davies,* 730 N.E.2d at 735.

We conclude that Morales' statements to police at the police station were merely cumulative of other evidence that she inflicted the burn injury upon J.M.'s buttocks. Three physicians testified that J.M. had sustained a second degree burn to her buttocks. Dr. Alcid testified that Morales admitted having placed J.M. in a tub of hot water, causing the burn. The verdict was supported by substantial independent evidence of guilt. The trial court's admission of Morales' statements to police at the police station was harmless error.

### C. Statements to Dr. Alcid

Morales also contends that her statements to Dr. Alcid should have been

---

4. We note that Indiana Rule of Evidence 604, which governs qualifications of interpreters in court proceedings, provides: "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation."

excluded as "fruit of the poisonous tree." We cannot agree.

 The "fruit of the poisonous tree" doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful *searches and seizures*. *Hanna v. State*, 726 N.E.2d 384, 389 (Ind.Ct.App. 2000). When applied, the doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. *Id.* To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights. *Id.* Here, Morales does not claim any violation of her Fourth Amendment rights, so she cannot rely on the fruit of the poisonous tree doctrine. The trial court did not err when it denied Morales' motion to suppress her statements to Dr. Alcid.

### Issue Two: Mistrial

 Finally, Morales contends the trial court abused its discretion when it denied her motion for mistrial. The decision to grant a motion for mistrial lies within the sound discretion of the trial court. *Palmer v. State*, 486 N.E.2d 477, 483 (Ind.1985). The trial court's decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Mack v. State*, 736 N.E.2d 801, 803 (Ind. Ct.App.2000), *trans. denied.* In order to

establish that a denial of a mistrial motion constituted an abuse of discretion, the appellant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Palmer*, 486 N.E.2d at 483. The declaration of a mistrial is an extreme action which is warranted only when no other recourse could remedy the perilous situation. *Id.*

 Gary Stocco, Executive Director of the National Burn Victim Foundation, testified as an expert witness on Morales' behalf regarding the cause of J.M.'s injury. Despite a discovery order requiring the State to provide Morales with any "papers, documents, ... or other tangible objects which the State intends to use at trial," Record at 22, the State failed to provide Morales with any information about what it intended to use to impeach Stocco's credibility. During the State's cross-examination of Stocco, the prosecutor questioned Stocco about inconsistencies between his testimony in prior, unrelated trials and that in Morales' trial. Morales objected to only one of the questions regarding these alleged inconsistencies on the ground that it was irrelevant, and the trial court sustained that objection.[5] Morales made no other objections during the State's cross-examination of Stocco. After Morales examined Stocco further on redirect examination, the trial court recessed the trial for the weekend. The following Monday, Morales filed a written motion for mistrial claiming that she was deprived of her right to a fair trial due to the State's failure to provide her with the materials the State used to impeach Stocco's credibility.[6]

---

5. A party cannot use an objection which has been sustained as the basis for an appeal. *Beverly Enterprises, Inc. v. Spragg*, 695 N.E.2d 1019, 1022 (Ind.Ct.App.1998). Had Morales believed she was prejudiced despite the trial court's favorable ruling on the objection, her

remedy would have been to ask for an admonition or mistrial. *See id.* Morales requested neither remedy at that time.

6. Morales also argued that she was deprived of her right to present a defense, her right to

An objection to allegedly improper testimony must be made at that critical point in the trial when the evidence is offered or when the question is asked. *Jones v. State,* 425 N.E.2d 128, 131 (Ind. 1981); *see Strain v. State,* 560 N.E.2d 1272, 1274 (Ind.Ct.App.1990) (finding waiver of claim that trial court erroneously denied motion for mistrial where defendant failed to object to challenged testimony and moved for mistrial only after "lengthy cross examination" of witness), *trans. denied.* The requirement for timely objection at trial, with resulting waiver in its absence, applies notwithstanding a trial court's pre-trial ruling on admissibility of such evidence. *Lenoir v. State,* 515 N.E.2d 529, 529 (Ind.1987). Morales made only one objection during the State's cross-examination of Stocco. When the trial court sustained that objection, Morales neither requested an admonition nor a mistrial. Indeed, Morales did not move for a mistrial until after Stocco had completed his testimony, both on cross-examination and redirect examination, and after the trial court had recessed for the weekend. Morales has waived this claim of error for appellate review.[7]

Affirmed.

MATTINGLY–MAY, J., and VAIDIK, J., concur.

discovery, and her right to effective assistance of counsel. In addition, Morales contended that the prosecutor committed misconduct in her cross-examination of Stocco.

7. Due to Morales's waiver of this issue, we do not address whether she was entitled to discovery of the State's materials used to impeach her own witness. *See Potts v. Williams,* 746 N.E.2d 1000 (Ind.Ct.App.2001) (finding plaintiff's materials used to impeach defendant's own witness work-product and not discoverable by defendant absent a special showing).