Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 26 2014, 10:53 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**GARY R. MANNING**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY R. MANNING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A05-1312-CR-644 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Joseph P. Weber, Judge
Cause No. 10C03-1202-FD-167

**November 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Gary R. Manning was charged with and convicted of class D felony theft after he admitted to police officers that he pawned his employer's chainsaws. On appeal, Manning contends that the trial court erred in admitting his incriminating statements because they were not recorded on the police car's onboard camera pursuant to Indiana Evidence Rule 617. He also contends that the trial court committed fundamental error in admitting the statements because the officers did not advise him of his *Miranda* rights before questioning him. Because Evidence Rule 617 says nothing about recording statements with onboard cameras, we find no error on that ground. And we find no error, let alone fundamental error, in the admission of Manning's statements because he was not in custody when the officers questioned him and therefore was not entitled to *Miranda* warnings. Consequently, we affirm his conviction.

**Facts and Procedural History**

The relevant facts most favorable to the jury's verdict are that Manning worked for Jared Fritzinger's tree service company. Fritzinger customarily locked his tools in his truck at the end of a work day. One day in late January 2012, Manning locked two of Fritzinger's chainsaws in his truck and told Fritzinger, "[T]hey'll be okay." Tr. at 138. Fritzinger agreed. The next day, Fritzinger looked inside Manning's truck and noticed that the saws were gone. Fritzinger asked where the saws were, and Manning replied, "[O]h well somebody must have stole them[.]" *Id*. at 141. Fritzinger asked if he had taken the saws, and Manning said, "[N]o, why, why do you think I'd do something like that?" *Id*. at 143. Fritzinger initially

2

believed Manning "because he'd never done anything like that before." *Id*. Manning's landlord, Joern Khafad, urged Fritzinger to call the police, but Fritzinger declined.

On February 3, 2012, however, Fritzinger filled out a police report about the missing saws, and Khafad called the police, who arrived at Manning's residence in Jeffersonville. Fritzinger and Khafad were there, as was Manning, who was "rummaging through" a pickup truck. *Id*. at 75. Jeffersonville Police Officer Justin Salisbury and Major Jason Broady talked to Fritzinger, who told them that he thought that Manning had pawned his saws. Officer Salisbury then approached Manning and asked him to "step out of the vehicle" so that they "could have some dialogue" about why the officers "were actually there on the premises." *Id*. Manning complied with the request. Officer Salisbury asked Manning "if there was any truth to what" Fritzinger was saying and told Manning that he "was there to get his side of the story and try to resolve this." *Id*. Manning stated that he "borrowed" the saws from Fritzinger because he "needed money" and that he "took them to a pawn shop and received funds for them." *Id*. at 75, 76. Major Broady asked Manning "[i]f he had any pawn tickets on his person[,]" and Manning took two pawn tickets out of his wallet. *Id*. at 76. Major Broady then handcuffed Manning and told him that he was going to jail.

The State charged Manning with class D felony theft.[1] Manning failed to appear for trial and was tried in absentia. Defense counsel objected to testimony regarding Manning's statements to the officers on the basis that they were not recorded pursuant to Indiana

---

[1] Manning was charged with exerting unauthorized control over two chainsaws and a backpack blower. Appellant's App. at 8. At trial, Fritzinger testified at length regarding the chainsaws but admitted that he did not "know where or how [the blower] disappeared but it, it disappeared … close to the same time" as the saws. Tr. at 140.

Evidence Rule 617. The trial court overruled the objection. The jury found Manning guilty as charged.

After counsel filed an appellant's brief and a reply brief on Manning's behalf, Manning filed a pro se motion for withdrawal of counsel and an order to proceed pro se. Manning's counsel filed a motion to withdraw appearance. Both motions were granted, and Manning filed a pro se appellant's brief. The State filed a notice that it would not be filing an amended appellee's brief.

**Discussion and Decision**

**Section 1 – Evidence Rule 617**

Manning first contends that the trial court erred in admitting his statements to the officers because they were not recorded pursuant to Evidence Rule 617. The rule provides in pertinent part that "[i]n a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved, and is available at trial," except in certain circumstances not relevant here. Ind. Evidence Rule 617(a). For purposes of the rule, "Custodial Interrogation" means "an interview conducted by law enforcement during which a reasonable person would consider himself or herself to be in custody"; "Place of Detention" means "a jail, law enforcement agency station house, or any other stationary or mobile building owned or operated by a law enforcement agency at which persons are detained in connection with criminal investigations"; and "Electronic Recording" means "an audio-visual recording that includes at least not only the visible

4

images of the person being interviewed but also the voices of said person and the interrogating officers." Ind. Evidence Rule 617(b). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Herron v. State*, 10 N.E.3d 552, 556 (Ind. Ct. App. 2014).

Manning argues that, pursuant to Evidence Rule 617, the officers should have recorded his statements with their police car's onboard camera. Because the rule imposes no such requirement, Manning's argument fails. We find no abuse of discretion here.

### Section 2 – *Miranda*

Manning also contends that the trial court erred in admitting his statements to the officers because they did not advise him of his *Miranda* rights before questioning him. Defense counsel did not object on this basis at trial and therefore waived the issue for appeal. *Brownlee v. State*, 555 N.E.2d 505, 509 (Ind. Ct. App. 1990). Manning concedes this point but argues that reversal is required because the trial court committed fundamental error. Our supreme court recently explained that fundamental error

> is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002). In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." *Id.* The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994) (quoting *Hart v. State*, 578 N.E.2d 336, 338 (Ind. 1991)).

*Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (some citations omitted). The court stressed that

> "[a] finding of fundamental error essentially means that the trial judge erred …
> by not acting when he or she should have …." *Whiting v. State*, 969 N.E.2d
> 24, 34 (Ind. 2012). Fundamental error is meant to permit appellate courts a
> means to correct the most egregious and blatant trial errors that otherwise
> would have been procedurally barred, not to provide a second bite at the apple
> for defense counsel who ignorantly, carelessly, or strategically fail to preserve
> an error.

*Id*. With these principles in mind, we review Manning's *Miranda* claim.

"*Miranda* prohibits the introduction at trial of any statement 'whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *Bishop v. State*, 700 N.E.2d 473, 476 (Ind. Ct. App. 1998) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

> The *Miranda* warnings must inform the defendant of his right to remain silent
> and to the presence of an attorney and warn the defendant that any statement
> made may be used as evidence against him. *Loving v. State*, 647 N.E.2d 1123,
> 1125 (Ind. 1995). Statements obtained in violation of this rule are generally
> inadmissible in a criminal trial. *Id*. The protections are only implicated where
> the defendant has been subjected to custodial interrogation, which is
> "questioning initiated by law enforcement officers after a person has been
> taken into custody or otherwise deprived of his freedom of action in any
> significant way." *Cliver* [*v. State*, 666 N.E.2d 59, 66 (Ind. 1996)]. Thus, the
> initial *Miranda* inquiry is whether the defendant was "in custody" at the time
> of questioning.

*Id*. "Whether a person was in custody depends upon objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned." *Gauvin v. State*, 878 N.E.2d 515, 521 (Ind. Ct. App. 2007), *trans. denied* (2008).

The U.S. Supreme Court has explained that

[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

Although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody" for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.

*California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Mathiason*, 429 U.S. at 495).

The Court has also stated that

[a]n officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "'freedom of action.'" *Berkemer* [*v. McCarty*, 468 U.S. 420, 440 (1984)]. Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how

7

a reasonable person in that position would perceive his or her freedom to leave.

*Stansbury v. California*, 511 U.S. 318, 325 (1994) (some citations omitted).

Here, Major Broady testified that Manning "wasn't free to leave until [the officers] found out what was going on at, at the scene[.]" Tr. at 125. But there is no evidence that Major Broady ever communicated that to Manning, by word or deed. By contrast, Officer Salisbury testified that Manning *was* free to leave until Major Broady handcuffed him. *Id.* at 89. Defense counsel asked the officer, "So [Manning] could have said 'Officer I'll see you later, I'm walking, I'm out of here.'?" *Id.* He responded, "That happens sometimes uh in this line of work." *Id.* Consistent with Officer Salisbury's testimony, there is no evidence that either officer told or otherwise indicated to Manning that he was not free to leave the area outside his residence.

Manning asserts that Major Broady also testified that he "was a suspect." Appellant's Br. at 8 (citing Tr. at 116). We presume that Manning is referring to the following exchange:

> Q    Uh, you felt satisfied that the person that was accused uh in this situation was Mr. Manning?
>
> A    Yes.

Tr. at 116. Even assuming that this testimony means what Manning claims, there is no evidence that Major Broady communicated it to Manning in such a way that would have affected how a reasonable person in his position would perceive his freedom to leave. Officer Salisbury asked Manning to stop "rummaging through" the truck so that he could

8

"have some dialogue" with Manning about the disappearance of Fritzinger's saws, *id*. at 75, and Manning voluntarily complied with the request.

Manning's freedom of movement was not restricted to the degree associated with a formal arrest until Major Broady handcuffed him and told him that he was going to jail. At most, Manning was subjected to an investigatory stop for the purpose of confirming or dispelling the officers' suspicions that he had pawned Fritzinger's saws, and such a stop "is a lesser intrusion on the person than an arrest[.]" *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006).

In sum, Manning was not in custody until Major Broady handcuffed him, and therefore his incriminating statements were not obtained in violation of *Miranda*. As such, we find no error, let alone fundamental error, in the trial court's admission of the statements at trial. Consequently, we affirm Manning's theft conviction.

Affirmed.

RILEY, J., and MATHIAS, J., concur.