## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 17 2015, 9:59 am

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| David M. Payne | Gregory F. Zoeller |
| Ryan & Payne | Attorney General of Indiana |
| Marion, Indiana | |
| | J.T. Whitehead |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher R. Hall | February 17, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 27A05-1406-CR-267 |
| v. | Appeal from the Grant Superior Court |
| State of Indiana, | The Honorable Dana J. Kenworthy, Judge |
| *Appellee-Plaintiff* | The Honorable Brian McLane, Judge Pro Tempore |
| | Case No. 27D02-1310-FD-449 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Christopher R. Hall was convicted of domestic battery, strangulation, and invasion of privacy. On appeal, Hall argues that the trial court erred by admitting two pieces of evidence at his trial. We find no error in the admission of the challenged evidence, yet we note that any error would have been harmless in light of the substantial evidence of Hall's guilt. We affirm.

# Facts and Procedural History

[2] Hall met and married his wife, Erin, in 2011. Their relationship was tumultuous; they often fought over Erin's employment at a local strip club. Hall was controlling and discouraged Erin from seeing her family. Tr. p. 113-14. During her marriage to Hall, Erin "d[idn't] really feel like [she] had [a life]." *Id.* at 116.

[3] In October 2013 Erin "went and got divorce papers." *Id.* When Hall learned what Erin had done, he "blew up," began screaming and ripping up the papers, and threatened to kill her. *Id.* at 116-17. Erin filed a police report and obtained a no-contact order against Hall, but she and Hall later reconciled. *Id.* at 118.

[4] Two months later, Erin returned home one day to find an angry Hall waiting for her. Hall called her "a crappy mom" and accused her of "screwing some guys." *Id.* at 119. Erin tried to ignore Hall, but he only became angrier. He threw an ashtray and a box of crackers at her, calling her a "f***ing whore," a "f****ing liar," and a "f****ing cheater." *Id.* at 119-20. He also hit her in the face and head and kicked her. *Id.* at 120, 124-25. At one point, he pinned Erin

down and held her neck in "a choke[-]hold type thing," and had "his hand over [her] mouth and nose . . . ." *Id.* at 123. Hall repeatedly told Erin, "if you want to act like a whore, I'll treat you like one." *Id.*

[5] Erin called her friend Sasha for help. *Id.* at 121. Hall began hitting Erin repeatedly and trying to take her phone. *Id.* When he got her phone, Hall ended the call and stomped on the phone, breaking it. *Id.* at 122. Hall and Erin's children witnessed the dispute, and Hall hit Erin while she was holding their one-year-old daughter. *Id.* at 120, 125. Hall eventually released Erin and left the home. *Id.* at 124.

[6] During Erin's call to Sasha, Sasha overheard Hall screaming and calling Erin names. Sasha asked her boyfriend David to go pick Erin up. When David arrived at the house a few minutes later, Erin answered the door. *Id.* at 77. Her "eyes [were] real red where she'd been crying, her face was real red, her neck was real red, [and] her hair was all messed up." *Id.* One of the children told David that "her dad had her mom down choking her, and told her to go downstairs so she wouldn't see it . . . ." *Id.* at 79. David called the police.

[7] Police arrived a short time later. They interviewed Erin and photographed her injuries. One of the children reported that "Daddy hit Mommy again." *Id.* at 279. An officer observed Erin hunched over and holding her midsection. *Id.* at 282-83. He also observed injuries to her neck, cheek, and ribs. *Id.* at 283.

[8] Police located Hall and arrested him. The State charged Hall with Class D felony intimidation, Class D felony domestic battery in the presence of a child,

Class D felony strangulation, Class A misdemeanor interference with reporting of a crime, Class A misdemeanor driving while suspended, and Class A misdemeanor invasion of privacy. Appellant's App. p. 28-30 (charging informations). Hall filed a motion for a speedy trial. *See id.* at 66-67.

[9] Hall's jury trial began in April 2014. The State sought to introduce a recording of a jail telephone call between Hall and his mother and grandfather. Defense counsel objected and argued that the recording lacked probative value. The State responded that it was extremely probative because in the recording, Hall discussed the dispute, denied the charges against him, and threatened suicide. Tr. p. 203. Defense counsel also objected on the grounds that he had not received the recording until the day before trial.[1] *Id.* at 189-91. The State responded that it was "common to turn over jail calls days before trial because it is one of the things we look at last when we're putting together a case." *Id.* at 188. Defense counsel then requested that the court exclude certain portions of the recording—specific statements made by Hall's mother and grandfather— and the court did so.[2] *Id.* at 192-95, 205-09. Defense counsel conceded that Hall's statements were admissible as statements of a party opponent. *Id.* at 198, 204.

---

[1] The trial court's only response to this argument appears to be its statement that "I do find, and again I know there was late notice on this . . . ." Tr. p. 205.

[2] Counsel also asked that the recording not be played in full; the end of the recording contained inadmissible hearsay statements made by one of the children. The trial court granted this request as well. *See* Tr. p. 189, 199.

In addition to redacting portions of the recording, the trial court admonished the jury before the recording was played:

> The statements, opinions, questions, and conduct of the other individuals participating in the telephone call are hearsay and are being admitted for a limited purpose. They are being admitted to provide context for any statements made by the defendant. Those statements, opinions, questions, or conduct of the other participants in the telephone call may not be considered as substantive evidence to establish any fact expressed by them. Just as with other forms of evidence introduced during the trial, the evidence on the recording of the call must conform to the rules of evidence. Because of that, there may be times when you notice the effects of the editing process when the recording is played in court. You are not to consider any such technical imperfections or any of the editing process. The only evidence actually presented to you, mainly Mr. Hall's statements during the phone call, should be considered.

*Id.* at 340-41. During the call, Hall discussed the dispute, blamed Erin, and claimed that Erin injured him. *See* State's Ex. 11. He also threatened to commit suicide. *Id.* Hall's mother and grandfather suggested that Hall battered Erin, but Hall repeatedly denied any wrongdoing. *Id.*

The State also called Linda Wilk, director of Hands of Hope, a domestic-violence program. Tr. p. 218. Wilk testified that she ran domestic-violence, sexual-violence, and stalking programs, as well as a domestic-violence shelter, and had more than twenty years of experience working in this field. *Id.* at 218-19. Wilk provided a chart illustrating the "escalation of violence":



**Escalation of Violence**

Hands of Hope/Family Service Society, Inc.
Marion, Indiana
24/7 Crisis Line 765-664-0701

Death
Severe injury
Injury with a weapon
Attempted strangulation
Threatens with a weapon
Beats up: pinned down/repeated blows
Hits with an object or closed fist
Kicks, bites, punches, confines
Slaps with open hand
Grabs, pushes, shoves, or throws objects
**This level becomes physical**    Destroys property
Threatens to harm the loved ones and/or pets
Coerces, threatens, intimidates victim
Name calling, insults, attacks self-esteem, critical of victim's personality
Isolates victim, discourages relationships with family, friends, neighbors
Controls every movement, manipulates, constantly accuses partner of infidelity
Purposely hurts feelings of loved ones, withholding compassion
Accidently hurts feelings of loved ones
Batterer is charming, loving and extremely attentive to partner's every need
**Relationship begins**

State's Ex. 7. Wilk testified that the chart would aid the jury in understanding her testimony about how domestic violence progresses and why a victim might not end a violent relationship. Tr. p. 225-26. The State moved to admit the chart for illustrative purposes. *Id.* at 227. Defense counsel objected, arguing that the chart included severe offenses not implicated in this case. *Id.* In response, the State argued that Wilk was

> not here [to talk] about this case specifically, she's here to educate the jury on what domestic violence is, and the escalation of violence is closely connected to what happens in domestic violence. She in no way knows any facts about this case, and if he wants to ask her about, you know, "does it always end in death?" "No," that's fine, but I think this is just used as a tool for her to educate the jury on what happens generally.

*Id.* at 227-28. Defense counsel then objected again based on the fact that Wilk did not know Erin. *Id.* at 228. The State reiterated that Wilk had only been

called to educate the jury about domestic violence and not to opine about Hall's case. *Id.* at 231. The trial court overruled defense counsel's objections. *Id.* Wilk proceeded to discuss the chart and the cyclical nature of domestic violence over defense counsel's continuing objection. During her testimony, Wilk stated that she was "not talking about this case" and "honestly [did] not know anything about this case." *Id.* at 237.

[12] At the close of the State's case, Hall testified in his own defense and claimed that Erin was the aggressor. *See id.* at 415-18. To support this theory, defense counsel utilized Wilk's escalation-of-violence chart, asking Hall's mother to note any behaviors on the chart that Erin had engaged in. *Id.* at 362-66.

[13] The jury found Hall guilty of domestic battery, strangulation, and invasion of privacy. The trial court sentenced Hall to an aggregate four-year term.

[14] Hall now appeals.

# Discussion and Decision

[15] Hall argues that the trial court erred by admitting the recording of the telephone call he made from jail to his mother and grandfather as well as the escalation-of-violence chart.

[16] We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *Herron v. State*, 10 N.E.3d 552, 556 (Ind. Ct. App. 2014) (citation omitted). An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* We do not

reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.*

[17] Hall first challenges the admission of his recorded conversation with his mother and grandfather. He argues that it should not have been admitted because it lacked probative value and was not provided to defense counsel in a timely fashion. We disagree.

[18] The recording had probative value. In the recording, Hall discussed the dispute, blamed Erin, and claimed that Erin injured him. He also threatened to commit suicide. Hall's mother's and grandfather's statements provided the necessary context for Hall's statements. *See Evans v. State*, 643 N.E.2d 877, 882 (Ind. 2006) (the purpose of the doctrine of completeness is "to provide context for otherwise isolated comments when fairness requires it."). As for the timeliness issue, Hall sought to exclude the recording at trial, but he did not request a continuance. "[A]s a general proposition, the proper remedy for a discovery violation is a continuance." *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000). "Failure to alternatively request a continuance upon moving to exclude evidence, where a continuance may be an appropriate remedy, constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order." *Id.* Here, Hall moved to exclude the

recording, but he did not request a continuance.[3]  Consequently, this issue is waived.  *See id.*

[19]  Waiver notwithstanding, Hall succeeded in excluding certain portions of the recording.  And before the rest of the recording was played, the trial court admonished the jury as follows:

> The statements, opinions, questions, and conduct of the other individuals participating in the telephone call are hearsay and are being admitted for a limited purpose.  They are being admitted to provide context for any statements made by the defendant.  Those statements, opinions, questions, or conduct of the other participants in the telephone call may not be considered as substantive evidence to establish any fact expressed by them.  Just as with other forms of evidence introduced during the trial, the evidence on the recording of the call must conform to the rules of evidence.  Because of that, there may be times when you notice the effects of the editing process when the recording is played in court.  You are not to consider any such technical imperfections or any of the editing process.  The only evidence actually presented to you, mainly Mr. Hall's statements during the phone call, should be considered.

[20]  Tr. p. 340-41.  Although Hall's mother and grandfather suggested that Hall battered Erin during the call, Hall repeatedly denied any wrongdoing.  *See* State's Ex. 11.  We conclude that the trial court's admonishment—which directed the jury to focus on Hall's statements—cured any possible prejudice

---

[3] According to Hall, "the scheduled trial date . . . was the 70[th] day after filing for the [] speedy trial." Appellant's Br. p. 20.  Hall argues that he needed more time to examine the recording and prepare for its use at trial, yet he admits that he did not wish to delay his trial.  Ultimately, Hall prioritized his speedy-trial date over having additional time to prepare.

or potential for unfair harm from the statements made by Hall's mother and grandfather. *See Walker v. State*, 988 N.E.2d 341, 347 (Ind. Ct. App. 2013) (a trial court's timely and accurate admonishment to the jury is presumed to cure any alleged error in the admission of evidence), *trans. denied*. We find no error here.

[21] Hall also argues that the trial court erred by admitting the escalation-of-violence chart. We need not determine whether the trial court erred in this respect, however, because although Hall challenges the chart's admission, he does not challenge the evidence accompanying it—Wilk's detailed testimony about the cyclical nature of domestic violence and the progression of violent relationships. Because the challenged evidence was cumulative of Wilk's testimony, any error in its admission would be harmless. *See Cole v. State*, 970 N.E.2d 779, 784 (Ind. Ct. App. 2012) (An error in the admission of evidence does not justify reversal if the evidence is cumulative of other evidence presented at trial). Moreover, Hall used the challenged evidence to further his defense theory that Erin was actually the aggressor. *See* Tr. p. 362-66 (defense counsel referencing the chart and asking Hall's mother to note any behaviors on the chart that Erin had engaged in). Because the escalation-of-violence chart was cumulative of Wilk's testimony and Hall attempted to use the chart to his benefit, Hall's argument on this issue fails.

[22] Although we reject Hall's claims of error, we note that any error would be harmless in light of the substantial evidence of Hall's guilt. *See Hape v. State*, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009) (an error in the admission of

evidence is harmless if the conviction is supported by substantial independent evidence of guilt that satisfies the reviewing court that there is no substantial likelihood that the challenged evidence contributed to the conviction) (citation omitted), *trans. denied*. Specifically, Erin testified that Hall hit, kicked, and choked her in front of the children. She also testified that Hall called her degrading names and tried to stop her from calling for help. Despite Hall's efforts, Erin's friend Sasha overheard the dispute and sent her boyfriend to the house. When he arrived, he observed that Erin's eyes, face, and neck were red and her hair was disheveled. One of the children said that "her dad had her mom down choking her, and told her to go downstairs so she wouldn't see it . . . ." When police arrived, they observed injuries to Erin's neck, cheek, and ribs, and a child reported that "Daddy hit Mommy again." In light of this evidence of Hall's guilt, any error in the admission of the challenged evidence would have been harmless.

[23] Affirmed.

Baker, J., and Riley, J., concur.