

**FILED**

Feb 26 2013, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS RAY SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  82A01-1204-CR-175 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Judge
Cause No. 82C01-1103-FA-381

**February 26, 2013**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In the instant case, appellant-defendant Dennis Smith claims that his recorded statement to police, during which he admitted to inappropriately touching his stepdaughter, who was about five years old at the time, should not have been admitted into evidence at trial because it was obtained in violation of the Fifth Amendment to the United States Constitution. Accordingly, Smith requests that we reverse his four convictions for class A felony Child Molesting.[1]

Additionally, both the State and Smith maintain that Smith's convictions violate the prohibition against double jeopardy found in Article I, Section 14 of the Indiana Constitution. Insofar as the State was pleading in the alternative in Counts III and IV, rather than alleging four separate counts of child molesting, but finding no other error, we affirm in part, reverse in part, and remand with instructions to the trial court to vacate Smith's convictions on Counts III and IV.

## FACTS

Smith was married to Gina, M.A.'s mother, for fourteen years. When M.A. was four or five years old, Smith sexually molested her on two occasions after Gina had left the house. M.A. did not have complete recollection of the second occasion but stated that she could "remember the pain . . . [i]n [her] vagina." Tr. p. 41. M.A. did not tell anyone about the molestation for several years because she was afraid of Smith.

On March 22, 2011, M.A. told Kelly Schwent, her mother's best friend, and Kelly's husband, Dan, about the molestations. Kelly took M.A. back to her home to

---

[1] Ind. Code § 35-42-4-3.

inform Gina of the molestations. At the age of seventeen, M.A. had finally decided to reveal the fact that Smith had sexually molested her because she believed that she could handle the situation. Moreover, Smith and Gina had recently separated, and Smith was no longer staying in the family residence.

After Gina was informed that her daughter had been sexually molested by Smith, Gina, Kelly, and M.A., drove to Berry Plastics in Evansville, where Smith was employed, and confronted him in the parking lot. Smith denied the allegations while asking what he could do to make this go away. At some point, Gina hit Smith. Gina looked at Smith and gave him an ultimatum: Smith could either confront Gina's father or follow the three women to the police station. Smith chose the latter.

After contacting the police, M.A., Gina, and Kelly went to Holly's House, where they were interviewed by Detective Nathan Schroer of the Evansville Police Department. Later that night, and into the next morning, Detective Schroer advised Smith of his <u>Miranda</u>[2] rights, and Smith signed a waiver of those rights that was dated March 23, 2011.

Detective Schroer conducted a recorded interview with Smith. Relevant portions of that interview follow:

> Q . . . I'm going to bury you underneath this case because I have no choice, I mean if you put yourself in my shoes, you would have to, you know, because you would leave here thinking, that guy doesn't care, why shouldn't I, or we talk it out and we go from there.

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A  Okay, but what happens tonight, I mean what happens if I say I want a lawyer, do I get one in here now then we talk about it?

Q  No, we wouldn't get one in here now, I mean they don't come out at this time of the night, I'll tell you exactly what happens, if you were to go down that route they would go, and you've got to remember, here's what I'm telling you, if you went away for the rest of your life, he would say, oh don't talk to them, don't talk to them, that's what he would say, I'm being honest with you, you know, and I'd say that that's absolutely fine, I've sent a lot of people away for a lot of time because I was able to show a jury that they were guilty and then the jury wants to know, well what did they have to say about it, . . .

\*\*\*

A  Am I looking at life or something?

Q  No, you're not looking at life, no you're not looking at life, you have no criminal history, I don't, I don't see anything like that . . . .

\*\*\*

Q  … She said that it didn't happen more than two times, did it happen more than two times?

A  (inaudible)

Q  Okay, how many different locations?

A  One.

\*\*\*

Q  . . . are you saying it was your finger that touched her vagina?

A  It was my finger.

Tr. p. 138-39; 146; 149; 165.

4

On March 28, 2011, the State charged Smith with: Count I, class A felony child molesting by sexual intercourse and Count II, class A felony child molesting by sexual intercourse. On June 7, 2011, the State added Count III, class A felony child molesting by sexual deviate conduct and Count IV, class A felony child molesting by sexual deviate conduct. On February 8, 2012, the State added Count V, class A felony child molesting by sexual deviate conduct.

On February 22, 2012, Smith filed a motion to suppress "a portion of the statement of the Defendant taken by audio/video recording by Detective Nathan Schoer." Appellant's App. p. 29. Smith alleged that his statement was acquired in violation of his right to counsel under the Fifth Amendment to the United States Constitution and the Indiana Constitution. A hearing on the motion to suppress was held on the same date, and the trial court denied the motion.

Smith's jury trial commenced the next day, February 23, 2012. At trial, when the State offered the recorded interview between Smith and Detective Schroer into evidence as State's Exhibit D, Defense Counsel stated that there was no objection, and the trial court admitted the exhibit. However, immediately after the exhibit was admitted without objection, Defense Counsel stated in a bench conference that he was objecting to the exhibit on grounds that the motion to suppress "should have been granted, however, the Court denied that Motion." Tr. p. 106. The trial court overruled the objection.

The interview was played for the jury. Following deliberations, the jury returned a verdict of guilty on Counts I-IV and not guilty on Count V.

The trial court held a sentencing hearing on March 23, 2012, where it sentenced Smith to thirty years imprisonment on each of the four counts to be served concurrently, for a total executed term of thirty years. Smith now appeals, and the State cross-appeals.

## DISCUSSION AND DECISION

### I. Cross Appeal – Waiver

At the outset, the State contends that Smith has waived any claim concerning his recorded statement, inasmuch as he failed to make a contemporaneous objection at trial when it was offered into evidence. Although Smith filed a motion to suppress, that motion was denied following a hearing on February 22, 2012. Appellant's App. p. 6. Smith's jury trial commenced the next day. And this Court has opined that "once the matter proceeds to trial, the denial of a motion to suppress is insufficient to preserve an issue for appeal. Rather, the defendant must make a contemporaneous objection to the admission of evidence at trial." Kelley v. State, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005). Accordingly, Smith was required to object when the State offered his recorded statement into evidence.

Here, when the State offered Smith's recorded testimony, Defense Counsel stated, "No objection, Judge." Tr. p. 105. A few moments later, Defense Counsel requested to approach the bench, and during a bench conference stated: "I'm objecting to the admission of [Smith's recorded statement] for violation of the Constitutional Rights of the defendant and in fact the suppression should have been granted, however, the Court

6

denied that Motion, it's the Court's ruling [;] I don't want to make an objection in front of the jury." Id. at 106. The trial court overruled the objection.

While this is certainly not the typical way to object to evidence, it was sufficient to alert the trial court that the defense was objecting to the admission of the recorded statement and the grounds on which it was objecting. Indeed, the trial court ruled on the objection. Consequently, we decline to find waiver.

## II. The Fifth Amendment – Coerced Statement

Smith argues that the trial court erred by admitting his recorded statement to Detective Schroer during trial, insofar as it was coerced in violation of the Fifth Amendment to the United States Constitution. A trial court has broad discretion in ruling on the admission of evidence, and we will not disturb its ruling on appeal absent an abuse of that discretion. Palilonis v. State, 970 N.E.2d 713, 731 (Ind. Ct. App. 2012). An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and circumstances before the court. Id. "The admissibility of a defendant's statements to the police is determined by consideration of the totality of the circumstances." Laster v. State, 918 N.E.2d 428, 432 (Ind. Ct. App. 2009).

The Fifth Amendment to the United States Constitution grants a privilege against self-incrimination during custodial interrogation. Palilonis, 970 N.E.2d at 732; see also Miranda v. Arizona, 384 U.S. 436, 461 (1966). Miranda warnings are used to secure a criminal defendant's right against self-incrimination. Kelley, 825 N.E.2d at 427.

7

However, an individual is entitled to the protections afforded by Miranda only when he is subjected to custodial interrogation. Palilonis, 970 N.E.2d at 732.

Custodial interrogation is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Morales v. State, 749 N.E.2d 1260, 1265 (Ind. Ct. App. 2001) (quoting Bishop v. State, 700 N.E.2d 473, 476 (Ind. Ct. App. 1998)). Whether a criminal defendant is in custody turns on whether a reasonable person in the same circumstances would not feel free to leave. Id. This inquiry depends upon the "objective circumstances" as opposed to the subjective views of the interrogating officers or the subject being questioned. Id.

In this case, after Smith was confronted by Gina regarding M.A.'s accusations that he had molested her, Smith voluntarily went to the police station. Tr. p. 49-50. Further, Smith voluntarily waited at the police station while Detective Schroer interviewed M.A., Gina, and Kelly at Holly's House. Id. at 171. Moreover, during the interview, Smith was not under arrest, remained unrestrained, and was allowed to leave during the interview to get a drink of water. State's Ex. D. Under these circumstances, we cannot say that Smith was in formal custody when he made his recorded statement to police.

Even assuming solely for argument's sake that Smith was in custody when he gave his recorded statement, the statement was not coerced. Contrary to Smith's assertions, he did not make a request for counsel such that Detective Schroer was required to stop questioning him. Although, under Miranda, police questioning must

8

cease when a defendant requests counsel, a defendant's request for counsel must be unambiguous and unequivocal. Carr v. State, 934 N.E.2d 1096, 1102 (Ind. 2010).

In the instant case, Smith made two references to an attorney during the interview:

Okay, but what happens tonight, I mean what happens if I say I want a lawyer, do I get one in here now then we talk about it?

Tr. p. 139

If I ask for a lawyer and what's it going to be, what's it going to be?

Id. at 143.

We cannot conclude that either of these statements is an unambiguous and unequivocal request for legal representation. See Bailey v. State, 763 N.E.2d 998, 1003 (Ind. 2002) (concluding that defendant's statement that "I may need a what do you call it . . . a appointed . . . oh appointed attorney," did not amount to an unequivocal invocation of his right to an attorney).

Similarly, we do find that Smith's statements were voluntary. As stated above, Smith voluntarily went to the police station where he was interviewed unrestrained. Smith was fully and completely advised of his Miranda rights, and he knowingly, intelligently, and voluntarily waived those rights. Tr. p. 108-09. Nevertheless, Smith attempts to challenge the voluntariness of his statement by arguing that Detective Schroer used coercive tactics by repeatedly telling Smith that that he would "bury him." Appellant's Br. p. 9.

For example, during the interview, Detective Schroer stated:

9

> I'm going to bury you underneath this case because I have no choice, I mean if you put yourself in my shoes, you would have to, you know, because you would leave here thinking, that guy doesn't care, why shouldn't I, or we talk it out and we go from there.

Tr. p. 138-39. These statements were made in reference to the amount of evidence that Detective Schroer had against Smith if the case went to trial. Indeed, Detective Schroer was confronting Smith with the circumstances that he was facing rather than issuing a physical threat. Consequently, Smith's arguments attacking the voluntariness of his recorded statement fail.

## II. Double Jeopardy

Smith maintains that two of his convictions must be vacated, inasmuch as they violate Indiana's prohibition against double jeopardy. A defendant is protected against double jeopardy by Article I, Section 14 of the Indiana Constitution. Two or more offenses constitute the same offense "if, with respect to <u>either</u> the statutory elements of the challenged crimes <u>or</u> the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." <u>Richardson v. State</u>, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original).

Here, M.A. alleged that Smith molested her by engaging in sexual intercourse with her on two separate occasions. Tr. p. 37-41. In Smith's statement to Detective Schroer, he denied engaging in sexual intercourse with M.A. but admitted that he may have used his finger. <u>Id.</u> at 164-65. Accordingly, the State concedes that it was pleading in the alternative when it charged Smith under Counts I and II with engaging in sexual

10

intercourse with M.A. on two separate occasions and under Counts III and IV with inserting his finger into M.A.'s vagina on two separate occasions. The State did not intend to charge Smith with four separate acts of child molestation. Consequently, we remand this case to the trial court to vacate Counts III and IV.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to the trial court to vacate Counts III and IV.

RILEY, J., and BARNES, J., concur.