## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 11:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Katherine Province
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis Ray Smith, *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, *Appellee-Respondent.* | February 28, 2018 <br><br> Court of Appeals Case No. 82A05-1709-PC-2123 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable David D. Kiely, Judge <br><br> The Honorable Kelli E. Fink, Magistrate <br><br> Trial Court Cause No. 82C01-1308-PC-23 |

**Najam, Judge.**

# Statement of the Case

Dennis Ray Smith appeals from the post-conviction court's denial of his petition for post-conviction relief. Smith raises a single issue for our review, namely, whether he was denied the effective assistance of trial counsel. We affirm.

# Facts and Procedural History

The facts underlying Smith's convictions were stated by this court on direct appeal:

> Smith was married to Gina, M.A.'s mother, for fourteen years. When M.A. was four or five years old, Smith sexually molested her on two occasions after Gina had left the house. M.A. did not have complete recollection of the second occasion but stated that she could "remember the pain . . . [i]n [her] vagina." Tr. p. 41. M.A. did not tell anyone about the molestation for several years because she was afraid of Smith.

> On March 22, 2011, M.A. told Kelly Schwent, her mother's best friend, and Kelly's husband, Dan, about the molestations. Kelly took M.A. back to her home to inform Gina of the molestations. At the age of seventeen, M.A. had finally decided to reveal the fact that Smith had sexually molested her because she believed that she could handle the situation. Moreover, Smith and Gina had recently separated, and Smith was no longer staying in the family residence.

> After Gina was informed that her daughter had been sexually molested by Smith, Gina, Kelly, and M.A., drove to Berry Plastics in Evansville, where Smith was employed, and confronted him in the parking lot. Smith denied the allegations while asking what he could do to make this go away. At some

point, Gina hit Smith. Gina looked at Smith and gave him an ultimatum: Smith could either confront Gina's father or follow the three women to the police station. Smith chose the latter.

After contacting the police, M.A., Gina, and Kelly went to Holly's House, where they were interviewed by Detective Nathan Schroer of the Evansville Police Department. Later that night, and into the next morning, Detective Schroer advised Smith of his *Miranda*[] rights, and Smith signed a waiver of those rights that was dated March 23, 2011.

Detective Schroer conducted a recorded interview with Smith. Relevant portions of that interview follow:

> Q . . . I'm going to bury you underneath this case because I have no choice, I mean if you put yourself in my shoes, you would have to, you know, because you would leave here thinking, that guy doesn't care, why shouldn't I, or we talk it out and we go from there.
>
> A Okay, but what happens tonight, I mean what happens if I say I want a lawyer, do I get one in here now then we talk about it?
>
> Q No, we wouldn't get one in here now, I mean they don't come out at this time of the night, I'll tell you exactly what happens, if you were to go down that route they would go, and you've got to remember, here's what I'm telling you, if you went away for the rest of your life, he would say, oh don't talk to them, don't talk to them, that's what he would say, I'm being honest with you, you know, and I'd say that that's absolutely fine, I've sent a lot of people away for a lot of time because I was able to show a jury that they were guilty and then the jury wants to know, well what did they have to say about it, . . .

* * *

A  Am I looking at life or something?

Q  No, you're not looking at life, no you're not looking at life, you have no criminal history, I don't, I don't see anything like that. . . .

* * *

Q  . . . She said that it didn't happen more than two times, did it happen more than two times?

A  (inaudible)

Q  Okay, how many different locations?

A  One.

* * *

Q  . . . are you saying it was your finger that touched her vagina?

A  It was my finger.

Tr. p. 138-39; 146; 149; 165.

On March 28, 2011, the State charged Smith with:  Count I, class A felony child molesting by sexual intercourse and Count II, class A felony child molesting by sexual intercourse.  On June 7, 2011, the State added Count III, class A felony child molesting by sexual deviate conduct and Count IV, class A felony child molesting by sexual deviate conduct.  On February 8, 2012, the State added Count V, class A felony child molesting by sexual deviate conduct.

On February 22, 2012, Smith filed a motion to suppress "a portion of the statement of the Defendant taken by audio/video recording by Detective Nathan Sch[r]oer." Appellant's App. p. 29. Smith alleged that his statement was acquired in violation of his right to counsel under the Fifth Amendment to the United States Constitution and the Indiana Constitution. A hearing on the motion to suppress was held on the same date, and the trial court denied the motion.

Smith's jury trial commenced the next day, February 23, 2012. At trial, when the State offered the recorded interview between Smith and Detective Schroer into evidence as State's Exhibit D, Defense Counsel stated that there was no objection, and the trial court admitted the exhibit. However, immediately after the exhibit was admitted without objection, Defense Counsel stated in a bench conference that he was objecting to the exhibit on grounds that the motion to suppress "should have been granted, however, the Court denied that Motion." Tr. p. 106. The trial court overruled the objection.

The interview was played for the jury. Following deliberations, the jury returned a verdict of guilty on Counts I-IV and not guilty on Count V.

The trial court held a sentencing hearing on March 23, 2012, where it sentenced Smith to thirty years imprisonment on each of the four counts to be served concurrently, for a total executed term of thirty years.

*Smith v. State*, 983 N.E.2d 226, 228-30 (Ind. Ct. App. 2013) ("*Smith I*"), *trans. denied*. On direct appeal, Smith alleged that his statement was inadmissible at trial because it was "coerced in violation of the Fifth Amendment to the United States Constitution" and that two of his convictions violated Indiana's prohibition against double jeopardy. *Id.* at 230. We rejected Smith's Fifth

Amendment claim, but we reversed two of his convictions, Counts III and IV, on double jeopardy grounds.

[3] On August 23, 2013, Smith filed a petition for post-conviction relief, and he filed amended petitions on December 27, 2016, and January 17, 2017. Smith alleged that he had been denied the effective assistance of trial counsel because his counsel: did not move to redact portions of his videotaped statement; did not object to portions of his videotaped statement; and did not object to the prosecutor's comments during closing arguments regarding Smith's post-*Miranda* silence. Following an evidentiary hearing, the post-conviction court denied Smith's petition. This appeal ensued.

## Discussion and Decision

[4] Smith appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review is clear:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's

findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).

Smith contends that he received ineffective assistance from his trial counsel, Jake Warrum.

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274.

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes,

poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002) (citations omitted). The two prongs of the *Strickland* test are separate and independent inquiries. *Williams v. State*, 706 N.E.2d 149, 154 (Ind. 1999). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).

[6]     Smith alleges that Warrum's representation was deficient with respect to his handling of several instances of "post-*Miranda* silence" during Smith's videotaped statement admitted at trial. Appellant's Br. at 13. In particular, Smith maintains that his videotaped statement contains ten instances where he did not respond to questions from Detective Schroer. In his post-conviction petition, Smith argued that Warrum should have moved to redact those portions of the interview or should have objected to those portions of the interview. Smith also argued that Warrum should have objected to the prosecutor's references to Smith's post-*Miranda* silence during his closing argument and rebuttal. The prosecutor stated as follows:

> You know they say sometimes a picture is worth a thousand words, and we had a couple [of] pictures, but I've also hear[d] sometimes that silence can be deafening, and I don't know how many times I counted during the course of Detective S[c]hroer's interview with the defendant when he asked point blank if [M.A.] were lying when there was nothing more than an awkward silence and no response at all from the defendant.

You saw the interview, you saw, you are allowed to take into consideration the way that this person looked [i]n that interview, and the silences in response, is she lying . . . .

Trial Tr. Vol. III at 222, 240.

[7] Smith's contentions on appeal rest on the United States Supreme Court's opinion in *Doyle v. Ohio*, 426 U.S. 610 (1976), which prohibits the State's use of a defendant's post-*Miranda* silence to impeach an exculpatory story told for the first time at trial. *See Barton v. State*, 936 N.E.2d 842, 850 (Ind. Ct. App. 2010), *trans. denied*. In particular, Smith contends that,

[a]lthough [he] was not in custody when he was interviewed by Detective Schroer and responded to many of the Detective's questions, his silence in response to certain questions is protected under the Due Process Clause and *Doyle* because he was advised of his *Miranda* rights prior to questioning. The State's use of Smith's silence as evidence of guilt was a violation of due process.

Appellant's Br. at 18. Indeed, as stated by the United States Court of Appeals for the Seventh Circuit,

[i]f a suspect does speak, he has not forever waived his right to be silent. *Miranda* allows the suspect to reassert his right to remain silent at any time during the custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). Thus[,] a suspect may speak to the agents, reassert his right to remain silent *or refuse to answer certain questions*, and still be confident that *Doyle* will prevent the prosecution from

using his silence against him. *United States v. Canterbury*, 985 F.2d 483, 486 (10th Cir. 1993).

*United States v. Scott*, 47 F.3d 904, 907 (7th Cir. 1995) (emphasis added).

[8] However, the State maintains that Smith "fails to meet his burden to show that any of the 10 instances to which he points during his interview qualify as 'silence' within the meaning of *Doyle*." Appellee's Br. at 14. The State characterizes those moments of silence as "natural pauses between questions[.]" *Id.* Further, the State avers that, "[w]here a defendant does not exercise his *Miranda* rights but instead makes a statement to the police, the defendant cannot thereafter claim a *Doyle* violation." *Id.* at 16.

[9] In support of its contention on this issue, the State cites to our Supreme Court's opinions in *Trice v. State*, 766 N.E.2d 1180 (Ind. 2002), and *Sylvester v. State*, 698 N.E.2d 1126 (Ind. 1998), but neither of those cases is on all fours with the instant case. *Trice* addresses the implications of *Doyle* in the context of "cross-examination that merely inquires into *prior inconsistent statements* [by a defendant].'" 766 N.E.2d at 1184 (emphasis added). In *Sylvester*, the Court stated, "we find no *Doyle* violation here since [the defendant] did not exercise his *Miranda* right. Quite simply, defendant did not remain silent." 698 N.E.2d at 1130. That certainly appears to suggest that, once a defendant waives his right to remain silent, he may not later claim a *Doyle* violation. But the circumstances of the alleged "silence" in *Sylvester* are different than those here. In particular, the court stated, "[w]here a defendant chooses to fabricate a story,

he has not remained silent and cannot claim a *Doyle* violation," and "that defendant did not tell the police where his wife's body was does not mean that he remained silent in the *Doyle* sense." *Id.* at 1130 n.5, 1131. In other words, the alleged *Doyle* violation in *Sylvester* did not involve the State's use of the defendant's silent refusal to answer questions to impeach him.

[10] Here, in contrast, in its closing argument and rebuttal, the State specifically referred to Smith's "silence" in the face of questions regarding whether M.A. had lied about the molestations. That would seem to squarely implicate Smith's protections under *Doyle*. But we need not decide whether trial counsel's failure to object under *Doyle* fell below an objective standard of reasonableness because an alleged *Doyle* violation is subject to a harmless error analysis. *See Johnson v. State*, 901 N.E.2d 1168, 1173 (Ind. Ct. App. 2009). In *Bieghler v. State*, 481 N.E.2d 78, 92 (Ind. 1985), our Supreme Court set out a five-part test to determine whether a *Doyle* violation is harmless: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions. Here, while three of the elements of the *Bieghler* test would mitigate against finding harmless error, the other two elements are satisfied and weigh heavily towards holding the error to be harmless.

[11] In particular, the quantum of evidence of Smith's guilt is substantial. In addition to M.A.'s trial testimony that, on two occasions, Smith penetrated her

vagina with his penis, M.A.'s mother and aunt both testified that, when they confronted Smith about the allegations, he did not deny them but asked M.A.'s mother how to "make this go away." *Id.* at 73. During his interview with Detective Schroer, Smith corroborated M.A.'s testimony that Smith had carried her up the stairs and that he had molested her in a bedroom. And Smith admitted to Detective Schroer that he had pulled up M.A.'s shirt and fondled her breasts and that he had pulled down M.A.'s pants and touched her vagina with his finger. Thus, Smith admitted to facts that supported a Class A felony under Indiana Code Section 35-42-4-3 (1999). Smith also stated that he was "sorry for what [he] did to [M.A.]" Trial Tr. Vol. III at 160. Finally, the prosecutor made only two passing references to Smith's silence in the face of questions during the interview, and, thus, neither the intensity nor frequency of the references is significant.[1]

[12] We hold that a *Doyle* violation, if any, was harmless. Accordingly, Smith cannot show that he was prejudiced by his trial counsel's alleged deficient performance, i.e. he cannot show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. The

---

[1] With respect to Smith's contention that Warrum should have moved to redact the silences from the interview or should have objected to the silences, Smith does not direct us to any relevant authority to show that such a motion would have been granted or that such objections would have been sustained. A *Doyle* violation occurs when the State *uses* a defendant's post-*Miranda* silence to impeach a defendant. *See Barton*, 936 N.E.2d at 850. Here, the mere introduction into evidence of Smith's complete interview with Detective Schroer, including Smith's failure to respond to ten questions, is not equivalent to the State's use of those moments of silence to impeach Smith at trial.

post-conviction court did not err when it concluded that Smith was not denied the effective assistance of trial counsel.

[13] Affirmed.

Mathias, J., and Barnes, J., concur.